## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------

In re:                                    )    Case No.
                                          )
                                          )
PACIFIC ETHANOL HOLDING CO. LLC,          )    Chapter 11
et al.,                                   )    Joint Administration Pending
                                          )
                  Debtors.[1]             )
                                          )
                                          )
------------------------------------------------ )

### MOTION OF DEBTORS FOR ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105(A) AND 363 AND BANKRUPTCY RULE 6003 AUTHORIZING (I) CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM, (II) CONTINUED USE OF EXISTING BANK ACCOUNTS, (III) AUTHORIZING CONTINUED USE OF EXISTING BUSINESS FORMS, (IV) AUTHORIZING INTERCOMPANY TRANSACTIONS, AND (V) GRANTING AN INTERIM WAIVER OF INVESTMENT AND DEPOSIT REQUIREMENTS

The debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors") hereby move for entry of an order, pursuant to sections 105 and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended (the "Bankruptcy Code"), Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2015-2 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), authorizing, but not directing (i) the continued maintenance and use of the Debtors' existing cash management system, (ii) the continued maintenance and use of the Debtors' existing bank accounts, (iii) the continued use of existing business forms and checks; (iv) the continuation of ordinary course intercompany transactions and (v) a waiver, on an interim basis, of investment and deposit requirements (the "Motion"). In support of the Motion, the Debtors rely upon and incorporate by reference the Declaration of

------

[1]     The Debtors consist of: Pacific Ethanol Holding Co. LLC (EIN: XX-XXX6981); Pacific Ethanol Madera LLC (EIN: XX-XXX3339); Pacific Ethanol Columbia, LLC (EIN: XX-XXX9392); Pacific Ethanol Stockton LLC (EIN: XX-XXX8349); Pacific Ethanol Magic Valley, LLC (EIN: XX-XXX7391). Pacific Ethanol Holding Co. LLC is the sole member of each of the other Debtors. The mailing address for Pacific Ethanol Holding Co. LLC is 400 Capitol Mall, Suite 2060, Sacramento, CA 95814.

Christopher W. Wright in Support of First Day Pleadings, filed concurrently herewith (the "Wright Declaration"). In further support of the Motion, the Debtors, by and through their undersigned counsel, respectfully represent:

## JURISDICTION

1.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409. The predicates for the relief requested herein are sections 105(a) and 363 of the Bankruptcy Code, Bankruptcy Rule 6003, and Local Rule 2015-2.

## BACKGROUND

2.      On the date hereof (the "Petition Date"), Pacific Ethanol Holding Co. LLC ("PE HoldCo") and four (4) of its direct wholly-owned subsidiaries each commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors and debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors have requested that these chapter 11 cases (the "Chapter 11 Cases") be jointly administered.

3.      No creditors' committee has been appointed in these Chapter 11 Cases by the United States Trustee. No trustee or examiner has been appointed in any of the Debtors' Chapter 11 Cases.

## COMPANY BACKGROUND

4.      The Debtors consist of four limited liability companies, each of whom owns an ethanol plant (each a "Plant LLC" and collectively, the "Plant LLCs") with current combined ethanol production capacity of over 200 million gallons per year ("MGY"), and PE HoldCo as owner/holding company for the Plant LLCs. Two of the ethanol plants are located in

California, one is located in Idaho and one is located in Oregon. Due to economic and financial constraints only the ethanol plant located in Oregon is operating at the present time. Prior to the filing of the Chapter 11 Cases, the Debtors were the production facilities for Pacific Ethanol, Inc. ("PEI") a public company, and its subsidiaries (collectively the "PEI Group"). As part of the PEI Group, the Plant LLCs were managed by PEI and the ethanol and its co-products, including wet distillers grain ("WDG"), produced at the ethanol plants were marketed and sold to customers[2] primarily in California, Nevada, Arizona, Oregon, Colorado, Idaho and Washington by PEI Group affiliates under arms-length commercial contracts as more fully described below. The ethanol plants were built at their locations as part of a destination business model, whereby each respective ethanol plant achieves lower process and transportation costs by servicing local markets for both ethanol and WDG. The ethanol plants are as follows:

- **Madera Plant**--located in Madera, California, commenced operations in October 2006 and has an annual production capacity of up to 40 MGY.

- **Boardman Plant**--located in Boardman, Oregon, commenced operation in September 2007 and has an annual production capacity of up to 40 MGY.

- **Magic Valley Plant**--located in Burley, Idaho, (Magic Valley) commenced operations in April 2008 and has an annual production capacity of up to 60 MGY.

- **Stockton Plant**--located in Stockton, California, commenced operations in September 2008 and has an annual production capacity of 60 MGY.

---

[2]     The ethanol is sold to gasoline refining and distribution companies, while the WDG is sold to dairy farm operators and animal feed distributors for consumption by farm animals, including dairy cows and beef cattle.

5.     As indicated above, at the present time only the Boardman Plant is in operation. The Madera, Magic Valley and Stockton Plants are in "cold shut down" with no current business operations.

**Prepetition Capital Structure**

6.     As of the Petition Date, the aggregate principal amount of the Debtors' secured indebtedness was approximately $247,307,091 plus accrued and unpaid interest, fees and other costs and consisted of, among other things, construction/project financing, term loans, a revolving loan facility and a note payable.

**Events Leading to a Chapter 11 Filing**

7.     The Debtors' liquidity is materially affected by uncertain commodity prices for corn, natural gas and ethanol. Corn and ethanol prices have been highly volatile, do not necessarily move in the same direction (i.e., high corn prices do not necessarily result in high ethanol prices) and are impacted by a number of factors beyond the Debtors' control. Ethanol prices are generally influenced by the supply and demand for gasoline, the availability of substitutes and the effect of related laws and regulations. By contrast, corn prices are not significantly related to gasoline supply and demand; rather the availability and price of corn are subject to wide fluctuations due to unpredictable factors such as weather conditions during the corn growing season, crop yields, governmental policy with respect to agriculture and international supply and demand. Additionally, the Debtors are also impacted by other major costs including natural gas, transportation, and the purchase price of ethanol from other producers, which in turn are also highly volatile and difficult to forecast. During the latter part of 2008, the price of ethanol declined precipitously causing the Debtors' gross margins to

decrease. In addition to decreasing margins, operating costs increased as a result of the construction of three additional ethanol plants in 2007 and 2008.

8.    Ultimately, sizeable fluctuations in the price of corn, natural gas and ethanol, coupled with obligations to service the Debtors' debt in the face of a continued lack of liquidity in the credit markets since 2007 and the inability to raise additional investment capital from depressed equity markets, have precipitated these Chapter 11 Cases.

9.    For a more complete description of the Debtors' prepetition capital structure and intercompany structure and operations, reference is made to the Wright Declaration.

## RELIEF REQUESTED

10.    By this Motion, the Debtors seek entry of an order (the "Order"), pursuant to sections 105(a) and 363 of the Bankruptcy Code and Local Rule 2015-2, authorizing (a) the continued maintenance and use of the Debtors' existing cash management system, (b) the continued maintenance and use of the Debtors' existing bank accounts, (c) the continued use of existing business forms and checks, (d) the continuation of ordinary course intercompany transactions, and (e) a waiver, on an interim basis, of investment and deposit requirements.

## BASIS FOR RELIEF

### A.    The Debtors Should Be Authorized To Continue To Use Their Existing Cash Management System

11.    Before the commencement of these cases, the Debtors used independent cash management systems to collect, transfer and disburse funds generated by their operations and to accurately record all such transactions as they are made (collectively, the "Cash Management System") in the ordinary course of business. Importantly, the Debtors' Cash Management System has been constructed to provide a substantially unified system for the

Debtors which allows for an integrated method of accounting for revenues and expenses to be collected and paid. In this regard, all cash disbursements and receipts are controlled and monitored by the Debtors' officers located in Sacramento, California in accordance with the Management Agreement (as defined in the Wright Declaration) between the Plant LLCs, PE HoldCo and PEI. By centralizing control over the Cash Management System, the Debtors are able to facilitate cash forecasting and reporting, monitor collection and disbursement of funds, reduce administrative expenses by facilitating the movement of funds and the development of timely and accurate balance and presentment information, and administer the various bank accounts required to effect the collection, disbursement and movement of cash.

12. Overall, the Cash Management System consists primarily of three (3) active bank accounts utilized by the Debtors through which the Debtors are able to manage cash receipts and disbursements (collectively, the "Bank Accounts"). A schedule of all the Bank Accounts maintained by the Debtors, including the names and addresses of the institutions, the general purpose of the Bank Accounts, and the Bank Account numbers, is attached as Exhibit A hereto.

13. Two of the Bank Accounts are held at Amarillo National Bank (Account Nos. xxx872 and xxx864) and are controlled by PE HoldCo. These two accounts are comprised of an operating and maintenance account and a revenue account that are required to be maintained pursuant to certain credit agreements between the Debtors and the financial institutions thereto. PE HoldCo handles the disbursements and receipts for the four Plant LLCs in accordance with the Management Agreement, including: payroll reimbursement to PEI disbursed from Account No. xxx872, payment of marketing fees to Pacific Ag. Products, LLC disbursed from Account No. xxx872, monthly payment of operation and maintenance fees to PEI

disbursed from Account No. xxx872, receipt of payment from Kinergy Marketing LLC for ethanol sales deposited into Account No. xxx864, and payment from Pacific Ag. Products, LLC for co-product sales deposited into Account No. xxx864.

14.     The third Bank Account is an escrow account that is required to be maintained pursuant to that certain agreement between Pacific Ethanol Columbia, LLC ("PECOL") and Tidewater Barge Lines, Inc. This Bank Account is held at US Bank (Account No. xxxx60000) and is controlled by PECOL.

15.     In sum, the Debtors' Cash Management System allows for (a) overall corporate control of funds, (b) cash availability when and where needed among the Debtors, and (c) the reduction of administrative costs through a method of coordinating funds collection and movement. The Debtors' smooth transition into, and out of, chapter 11 depends on their ability to maintain these Bank Accounts and operate this Cash Management System without interruption. The Cash Management System allows the Debtors to manage all of their cash flow needs and includes the necessary accounting controls to enable the tracing of funds through the system to ensure that all transactions are adequately documented and readily ascertainable. The Debtors will continue to maintain detailed records reflecting all transfers of funds.

16.     The cash management procedures utilized by the Debtors constitute ordinary, usual and essential business practices and are similar to those used by other major corporate enterprises. The Cash Management System benefits the Debtors in significant ways, including the ability to (i) control corporate funds centrally, (ii) ensure availability of funds when necessary, and (iii) reduce administrative expenses by facilitating movement of the funds and the development of more timely and accurate balance and presentment information.

17.     In furtherance of this goal, the Debtors request that all banks at which the Bank Accounts are maintained (the "Banks") be authorized and directed to continue to administer the Bank Accounts as such accounts were maintained prepetition, without interruption and in the usual and ordinary course, and to pay any and all checks, drafts, wires, or electronic funds transfers presented, issued or drawn on the Bank Accounts on account of a claim arising on or after the Petition Date, provided that sufficient funds are in such Bank Accounts. The Debtors further request that the Banks be restrained from honoring any check, draft, wire or electronic funds transfer presented, issued or drawn on the Bank Accounts on account of a prepetition claim unless (i) authorized by an order of this Court, (ii) not otherwise prohibited by a "stop payment" request received by the Banks from the Debtors, and (iii) supported by sufficient funds in the Bank Account in question.

18.     To effectuate the foregoing, the Debtors request that the Banks be authorized and directed to honor all representations from the Debtors as to which checks should he honored or dishonored. To the extent that the Debtors have directed that any prepetition checks be dishonored, they reserve the right to issue replacement checks to pay the amounts related to such dishonored checks consistent with the orders of this Court.

19.     The operation of the Debtors' business requires that the Cash Management System continue during the pendency of these Chapter 11 Cases. Requiring the Debtors to adopt new, segmented cash management system at this early and critical stage of these cases would be expensive, would create unnecessary administrative problems, and would be much more disruptive than productive. Any such disruption could have an adverse impact upon the Debtors' ability to reorganize.

20.     Allowing the Debtors to utilize their prepetition Cash Management System is entirely consistent with applicable provisions of the Bankruptcy Code. Bankruptcy courts routinely permit chapter 11 debtors to continue using their existing cash management system, generally treating such requests for relief as a relatively "simple matter." In re Baldwin-United Corp., 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987); see also, In re Columbia Gas Sys., Inc., 136 B.R. 830, 934 (Bankr. D. Del. 1992) (recognizing that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash"), aff'd in part and rev'd in part, 997 F.2d 1039 (3d Cir. 1993), cert. denied, sub nom. Official Comm. of Unsecured Creditors v. Columbia Gas Transmission Corp., 510 U.S. 1110 (1994).

21.     Additionally, this Court has granted substantially similar relief in other large chapter 11 cases. See, e.g., In re Smurfit-Stone Container Corp., Case No. 09-10235 (Bankr. D. Del. Jan. 27, 2009) (Shannon, J.) [D.I. 41]; In re Nortel Networks Inc., Case No. 09-10138 (Bankr. D. Del. Jan. 15, 2009) (Gross, J.) [D.I. 58]; In re VeraSun Energy Corp., Case No. 08-12606 (Bankr. D. Del. Nov. 3, 2008) (Shannon, J.) [D.I. 34]; In re Boscov's, Inc., Case No. 08-11637 (Bankr. D. Del. Aug. 5, 2008) (Gross, J.) [D.I. 44]; In re Goody's Family Clothing, Inc., Case No. 08-11133 (Bankr. D. Del. June 10, 2008) (Sontchi, J.) [D.I. 67]; In re Sharper Image Corp., Case No. 08-10322 (Bankr. D. Del. Feb. 20, 2008) (Gross, J.) [D.I. 43]; In re Hancock Fabrics, Inc., Case No. 07-10353 (Bankr. D. Del. Mar. 22, 2007) (Shannon, J.) [D.I. 52].

22.     The Debtors therefore request authority to continue utilizing their Cash Management System as outlined herein.

**B.    The Debtors Should Be Authorized To Maintain Their Existing Bank Accounts**

23.    The Office of the United States Trustee has established certain operating guidelines for debtors-in-possession in order to supervise the administration of chapter 11 cases. These guidelines require chapter 11 debtors to, among other things: (i) close all existing bank accounts and open new debtor-in-possession bank accounts; (ii) establish one debtor-in-possession account for all estate monies required for the payment of taxes, including payroll taxes; (iii) maintain a separate debtor-in-possession account for cash collateral; and (iv) obtain checks for all debtor-in-possession accounts which bear the designation "Debtor-In-Possession," the bankruptcy case number and the type of accounts. These requirements are designed to draw a clear line of demarcation between prepetition and postpetition transactions and operations and prevent the inadvertent postpetition payment of prepetition claims. Pursuant to sections 105(a) and 363 of the Bankruptcy Code and Local Rule 2015-2(a), the Debtors seek a waiver of these requirements and authorization to continue using their existing bank accounts.

24.    As noted above, before the Petition Date, the Debtors maintained Bank Accounts, out of which they managed cash receipts and disbursements. The Debtors routinely deposit, withdraw and otherwise transfer funds to, from and among the Bank Accounts by various methods, including check, wire transfer, automated clearing house transfer, internal bank transfer and electronic funds transfer. The Debtors complete numerous transactions per month through the Bank Accounts.

25.    The Debtors seek a waiver of the United States Trustee's requirement that the Bank Accounts be closed and that new accounts be opened after the Petition Date. If enforced in these cases, such requirements would cause enormous disruption in the Debtors' businesses, thereby impairing their efforts to reorganize and pursue other alternatives to maximize the value of their estates. The Debtors' Bank Accounts are a part of a carefully-

constructed cash management system that permits the Debtors to fund their ongoing operations in a streamlined and cost-efficient manner. In order to avoid delays in payments to administrative creditors and to ensure as smooth a transition into chapter 11 as possible with minimal disruption, it is important that the Debtors be permitted to maintain their existing Bank Accounts and, when necessary, open new accounts. This relief is also necessary to aid the Debtors in their collective efforts to successfully and rapidly complete a restructuring of their businesses.

26.     The Debtors represent that if the relief requested in this Motion is granted, they will not pay, and each of the Banks at which the Bank Accounts are maintained will be directed not to pay, any debts incurred by the Debtors before the Petition Date other than as authorized by this Court. The Debtors will continue to work closely with the Banks that maintain the Bank Accounts against which checks are drawn in order to ensure that appropriate procedures are in place so that checks issued before the Petition Date on account of obligations of the Debtors, but presented after the Petition Date, will not be honored absent approval from this Court. Accordingly, in order to avoid delays in payments to administrative creditors, to ensure as smooth a transition into chapter 11 as possible with minimal disruption, and to aid the Debtors' efforts to complete those cases successfully and rapidly, the Debtors must be permitted to continue to maintain their existing Bank Accounts and, if necessary, open new accounts, wherever they are needed, whether or not such banks are designated depositories in the District of Delaware.

27.     In other cases in this District, it has been recognized that the strict enforcement of bank account closing requirements may not always serve the rehabilitative purposes of chapter 11. Accordingly, courts in this District have waived such requirements and

replaced them with alternative procedures that provide the same protections. See, e.g., In re Smurfit-Stone Container Corp., Case No. 09-10235 (Bankr. D. Del. Jan. 27, 2009) (Shannon, J.) [D.I. 41]; In re Nortel Networks Inc., Case No. 09-10138 (Bankr. D. Del. Jan. 15, 2009) (Gross, J.) [D.I. 58]; In re VeraSun Energy Corp., Case No. 08-12606 (Bankr. D. Del. Nov. 3, 2008) (Shannon, J.) [D.I. 34]; In re Boscov's, Inc., Case No. 08-11637 (Bankr. D. Del. Aug. 5, 2008) (Gross, J.) [D.I. 44]; In re Goody's Family Clothing, Inc., Case No. 08-11133 (Bankr. D. Del. June 10, 2008) (Sontchi, J.) [D.I. 67]; In re Sharper Image Corp., Case No. 08-10322 (Bankr. D. Del. Feb. 20, 2008) (Gross, J.) [D.I. 43]; In re Hancock Fabrics, Inc., Case No. 07-10353 (Bankr. D. Del. Mar. 22, 2007) (Shannon, J.) [D.I. 52].

**C.      The Debtors Should Be Granted Authority To Continue To Use Existing Business Forms And Checks**

28.     Local Rule 2015-2(a) provides:

> Where the debtor uses pre-printed checks, upon motion of the debtor, the Court may, without notice and hearing, permit the debtor to use its existing checks without the designation "Debtor-in-Possession" and use its existing bank accounts. However, once the debtor's existing checks have been used, the debtor shall when reordering checks, require the designation "Debtor-in-Possession" and the corresponding bankruptcy number on all such checks.

Del. Bankr. L.R. 2015-2(a).

29.     In order to minimize expenses to their estates, the Debtors also seek authorization to continue using all correspondence and business forms (including without limitation, letterhead, purchase orders, and invoices), without reference to the Debtors' status as debtors in possession. Most parties doing business with the Debtors undoubtedly will be aware of the Debtors' status as debtors in possession as a result of the notoriety of these cases, the press releases issued by the Debtors, and any additional press coverage. Moreover, each of the Debtors' vendors will receive direct notice of the commencement of these cases.

30. Changing correspondence and business forms would be expensive, unnecessary, and burdensome to the Debtors' estates and disruptive to the Debtors' business operations and would not confer any benefit upon those dealing with the Debtors. For these reasons, the Debtors request that they be authorized to use existing checks and business forms without being required to place the label "Debtor-in-Possession" on each.

31. This Court has routinely granted the same or similar relief to chapter 11 debtors. See, e.g., In re Smurfit-Stone Container Corp., Case No. 09-10235 (Bankr. D. Del. Jan. 27, 2009) (Shannon, J.) [D.I. 41]; In re Nortel Networks Inc., Case No. 09-10138 (Bankr. D. Del. Jan. 15, 2009) (Gross, J.) [D.I. 58]; In re VeraSun Energy Corp., Case No. 08-12606 (Bankr. D. Del. Nov. 3, 2008) (Shannon, J.) [D.I. 34]; In re Boscov's, Inc., Case No. 08-11637 (Bankr. D. Del. Aug. 5, 2008) (Gross, J.) [D.I. 44]; In re Goody's Family Clothing, Inc., Case No. 08-11133 (Bankr. D. Del. June 10, 2008) (Sontchi, J.) [D.I. 67]; In re Sharper Image Corp., Case No. 08-10322 (Bankr. D. Del. Feb. 20, 2008) (Gross, J.) [D.I. 43]; In re Hancock Fabrics, Inc., Case No. 07-10353 (Bankr. D. Del. Mar. 22, 2007) (Shannon, J.) [D.I. 52].

## D. The Debtors Should Be Authorized To Continue Intercompany Transactions

32. In the ordinary course of the Debtors' businesses, the Debtors have provided a number of services to and engaged in intercompany transactions to each other (collectively, the "Intercompany Transactions"). As described above, the Intercompany Transactions cover a variety of items, depending on the entity, including, without limitation, payroll transactions, management fees, allocation of insurance premiums and other general corporate transactions as well as machinery parts and raw material purchases made by one operating entity on behalf of another. The Intercompany Transactions are reflected in each individual debtor entity's books and records. The Debtors maintain records of all Intercompany Transactions and can ascertain, trace, and account for all Intercompany Transactions.

Intercompany Transactions are either settled in cash or reflected in each entity's books and records at the time of the transaction.

33.     The Intercompany Transactions are ordinary course transactions that are integral to the Debtors' businesses and the function of their Cash Management System and reduce the Debtors' administrative costs. In order to ensure that the businesses of the Debtors and their non-debtor affiliates are not interrupted by these Chapter 11 Cases, the Debtors seek approval and authorization to continue to undertake the Intercompany Transactions in the ordinary course and consistent with past practice.

34.     Courts frequently have authorized debtors to continue their prepetition intercompany funding practices after the commencement of chapter 11 cases. See, e.g., In re Smurfit-Stone Container Corp., Case No. 09-10235 (Bankr. D. Del. Jan. 27, 2009) (Shannon, J.) [D.I. 41]; In re Nortel Networks Inc., Case No. 09-10138 (Bankr. D. Del. Jan. 15, 2009) (Gross, J.) [D.I. 58]; In re VeraSun Energy Corp., Case No. 08-12606 (Bankr. D. Del. Nov. 3, 2008) (Shannon, J.) [D.I. 34]; In re Boscov's, Inc., Case No. 08-11637 (Bankr. D. Del. Aug. 5, 2008) (Gross, J.) [D.I. 44]; In re Goody's Family Clothing, Inc., Case No. 08-11133 (Bankr. D. Del. June 10, 2008) (Sontchi, J.) [D.I. 67].

**E.     The Debtors Should Be Granted An Interim Waiver of the Investment and Deposit Requirements**

35.     The Debtors believe that all of the Bank Accounts are in financially stable banking institutions with FDIC insurance (up to an applicable limit per Debtor per financial institution).

36.     The Debtors believe that their use of the Bank Accounts substantially conforms with the approved investment and deposit practices identified in Bankruptcy Code section 345, and that all money deposits are safe and prudent and yield, under the circumstances,

the maximum reasonable net return on such money. Nonetheless, out of an abundance of caution, to the extent that such deposits do not conform with the approved practices identified in Bankruptcy Code section 345, the Debtors seek to have such requirements waived for an interim period of thirty (30) days so as to allow the applicable banking institutions to accept and hold the Debtors' funds consistent with prepetition practices.

37.     The Debtors believe that sufficient cause exists pursuant to Bankruptcy Code section 345(b) to allow them to deviate from the approved investment practices established by the Bankruptcy Code. The Bank Accounts are comprised of an operating and maintenance account and a revenue account that are required to be maintained pursuant to certain credit agreements between the Debtors and the financial institutions party thereto and pursuant to the Management Agreement. Most of the Debtors' Bank Accounts are maintained in the ordinary course of business as minimum or zero balance accounts that do not carry significant overnight balances.

38.     Accordingly, the Debtors respectfully request authority (a) to continue depositing funds in a safe and prudent manner, in accordance with the Debtors' prepetition practices notwithstanding that such practices may not strictly comply in all respects with the approved investment practices set forth in Bankruptcy Code section 345, and (b) for the applicable institutions to accept and hold or invest such funds in accordance with the Debtors' prepetition practices.

39.     Section 345 of the Bankruptcy Code authorizes deposits or investments of money of a bankruptcy estate, such as cash, in a manner that will "yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a). For deposits or investments that are not "insured or guaranteed by the

United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," 11 U.S.C. § 345(b), section 345(b) of the Bankruptcy Code provides that the estate must require from the entity with which the money is deposited or invested a bond in favor of the United States secured by the undertaking of an adequate corporate surety, "unless the court for cause orders otherwise." Id.

40.     Pursuant to Local Rule 2015-2(b), however, a court may relieve a debtor in possession of the restrictions of Bankruptcy Code section 345(b) on an interim basis if there are more than 200 creditors. Del. Bankr. L.R. 2015-2(b) ("[I]f a motion for such a waiver is filed on the first day of a chapter 11 case in which there are more than 200 creditors, the Court may grant an interim waiver until a hearing on the debtor's motion can be held."). Additionally, a court may relieve a debtor in possession of the restrictions of Bankruptcy Code section 345(b) on a final basis for "cause." The Debtors believe that "cause" exists to waive the investment and deposit restrictions pursuant to Bankruptcy Code section 345(b).

41.     Courts have considered a number of factors in seeking to determine whether "cause" exists pursuant to Bankruptcy Code section 345(b). See In re Serv. Merch. Co., 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999) (identifying various factors relevant to the existence of "cause", including the sophistication and size of the debtor's business, the amounts of the investments involved, bank ratings, the complexity of the case, the debtor's safeguards for the funds, the debtor's ability to reorganize in the face of failure of one or more of the financial institutions, the benefit to the debtor of a waiver of the section 345(b) requirements, the potential harm to the estate, and the reasonableness of such a waiver under the circumstances).

42.     Congress has emphasized that Bankruptcy Code section 345's investment and deposit requirements may be "wise in the case of a smaller debtor with limited funds that

cannot afford a risky investment to be lost, [but such requirements] can work to needlessly handcuff larger, more sophisticated debtors." H.R. Rep. 103-834, 103d Cong., 2d Sess. 224 (Oct. 4, 1994); 140 Cong. Rec. H10767 (Oct. 4, 1994). Thus, Congress added the waiver clause in section 345(b) "to allow the courts to approve investments other than those permitted by section 345(b) for just cause, thereby overruling In re Columbia Gas Sys., Inc., 33 F.3d 294, 1994 WL 463514 (3d Cir. Del.)." Id.

43. The Debtors believe that "cause" exists to waive the investment and deposit restrictions pursuant to section 345(b) of the Bankruptcy Code to the extent that the Debtors' cash management deposits do not comply. As set forth above, many of the Bank Accounts are maintained as either "zero balance" or minimum balance accounts and typically do not maintain significant fund balances overnight. Therefore the investment and deposit restrictions of section 345(b) of the Bankruptcy Code can be waived with respect to these accounts as not applicable. Further, the Debtors do not make any short-term or long-term investments given their current Cash Management System.

44. To the extent that any account is construed to have a balance substantial enough to fall within the ambit of the protections provided by section 345 of the Bankruptcy Code, the Debtors believe that the safety presented by the financially stable banking institutions with whom the Debtors bank constitutes sufficient cause pursuant to section 345(b) of the Bankruptcy Code to allow the Debtors to deviate from approved investment and deposit practices established by the Bankruptcy Code. Additionally, to the extent that any of the financial institutions with whom the Debtors bank are not listed among the United States Trustee's approved depositories and further information is so required by the United States Trustee, the Debtors will confer with the United States Trustee and provide such information in

advance of any final hearing, if necessary. Accordingly, the Debtors respectfully request authority to maintain their Bank Accounts in a safe and prudent manner in accordance with their existing banking practices.

45.     In chapter 11 cases such as this, courts have routinely granted requests to approve the continued use of investment and deposit guidelines that do not strictly comply with section 345 of the Bankruptcy Code but that, as here, nevertheless are safe and prudent. See, e.g., In re Smurfit-Stone Container Corp., Case No. 09-10235 (Bankr. D. Del. Jan. 27, 2009) (Shannon, J.) [D.I. 41]; In re VeraSun Energy Corp., Case No. 08-12606 (Bankr. D. Del. Nov. 3, 2008) (Shannon, J.) [D.I. 34]; In re Goody's Family Clothing, Inc., Case No. 08-11133 (Bankr. D. Del. June 10, 2008) (Sontchi, J.) [D.I. 67].

**F.     Bankruptcy Rule 6003 has Been Satisfied and Bankruptcy Rule 6004 Should be Waived**

46.     The Debtors further submit that because the relief requested is necessary to avoid immediate and irreparable harm to the Debtors for the reasons set forth herein, Bankruptcy Rule 6003 has been satisfied.

47.     To successfully implement the foregoing, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the ten-day stay under Bankruptcy Rule 6004(h).

**NOTICE**

48.     Notice of this Motion will he given to: (a) the Office of the United States Trustee for the District of Delaware; (b) all required government entities; (c) counsel to the Debtors' prepetition secured lenders; (d) counsel to any proposed provider of debtor-in-possession financing; (e) the parties included on the Debtors' list of twenty (20) largest unsecured creditors, and (f) the financial institutions at which the Bank Accounts listed on

<u>Exhibit A</u> are maintained (collectively, the "<u>Notice Parties</u>"). The Debtors submit that, under the circumstances, no other or further notice is required.

## NO PRIOR REQUEST

49.     No previous request for the relief sought herein has been made to this or any other court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an Order, substantially in the form annexed hereto, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated:        Wilmington, Delaware
              May 17, 2009

                              Respectfully Submitted,

                              _____
                              Steven M. Yoder (DE Bar No. 3885)
                              Jeremy W. Ryan (DE Bar No. 4057)
                              POTTER ANDERSON & CORROON LLP
                              Hercules Plaza, Sixth Floor
                              1313 North Market Street
                              P.O. Box 951
                              Wilmington, Delaware 19899-0951
                              Phone:  (302) 984-6000
                              Facsimile:  (302) 984-1192

                              - and -

                              Lawrence C. Gottlieb (LB 2565)
                              Richard S. Kanowitz (RK 0677)
                              COOLEY GODWARD KRONISH LLP
                              1114 Avenue of the Americas
                              New York, NY 10036
                              Phone:  (212) 479-6000
                              Facsimile:  (212) 479-6275

                              *Proposed Counsel for Debtors and Debtors in Possession*

## EXHIBIT A

## Bank Accounts

## Pacific Ethanol Holding Co. LLC

| | | | | | |
|---|---|---|---|---|---|
| **Amarillo National Bank** | | PEHC | Operating Account | xxx872 | Active |
| **Address:** | 410 S. Taylor | PEHC | Revenue Account | xxx864 | Active |
| | PO Box 1 | | | | |
| | Amarillo, TX 79105 | | | | |
| **Contacts:** | Darren Jenks, VP (806) 378-8339 | | | | |
| | Sally Frierson, (806) 378-8230 | | | | |

| | | | | | |
|---|---|---|---|---|---|
| **US Bank** | | PECOL | Escrow Account | xxxx60000 | Active |
| **Address:** | 111 SW Fifth Avenue, Sixth Floor | | *Note Acct Title per statement:* | | |
| | | | *Pacific Ethanol Columbia LLC/Tidewater Barge Lines* | | |
| | Portland, OR 97204 | | *Inc/Tidewater Terminal Company Inc Escrow* | | |
| **Contacts:** | Cheryl K Nelson (503) 275-5708 | | | | |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

```
-------------------------------------------
                                          )
In re:                                    )   Case No.
                                          )
PACIFIC ETHANOL HOLDING CO. LLC,          )   Chapter 11
et al.,                                   )   Joint Administration Pending
                                          )
                      Debtors.¹           )
                                          )   Re: Docket No. ____
                                          )
-------------------------------------------)
```

**ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105(A) AND 363
AUTHORIZING (I) CONTINUED USE OF EXISTING CASH MANAGEMENT
SYSTEM, (II) CONTINUED USE OF EXISTING BANK ACCOUNTS, (III)
AUTHORIZING CONTINUED USE OF EXISTING BUSINESS FORMS, (IV)
AUTHORIZING INTERCOMPANY TRANSACTIONS, AND (V) GRANTING AN
INTERIM WAIVER OF INVESTMENT AND DEPOSIT REQUIREMENTS**

Upon the motion (the "Motion")[2] of the Debtors for an order, pursuant to sections

105 and 363 of the Bankruptcy Code and Local Rule 2015-2, authorizing (i) the continued

maintenance and use of the Debtors' existing cash management system, (ii) the continued

maintenance and use of the Debtors' existing bank accounts, (iii) the continued use of existing

business forms and checks; (iv) the continuation of ordinary course intercompany transactions;

and (v) a waiver, on an interim basis, of investment and deposit requirements and upon the

Wright Declaration; and due and sufficient notice of the Motion having been given under the

particular circumstances; and it appearing that no other or further notice need be provided; and it

appearing that the relief requested by the Motion is in the best interests of the Debtors' estates,

---

[1] The Debtors consist of: Pacific Ethanol Holding Co. LLC (EIN: XX-XXX6981); Pacific Ethanol Madera
LLC (EIN: XX-XXX3339); Pacific Ethanol Columbia, LLC (EIN: XX-XXX9392); Pacific Ethanol Stockton LLC
(EIN: XX-XXX8349); Pacific Ethanol Magic Valley, LLC (EIN: XX-XXX7391). Pacific Ethanol Holding Co.
LLC is the sole member of each of the other Debtors. The mailing address for Pacific Ethanol Holding Co. LLC is
400 Capitol Mall, Suite 2060, Sacramento, CA 95814.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the
Motion.

PAC/916579

their creditors, and other parties in interest; and after due deliberation thereon; and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

1. The Motion is GRANTED.

**<u>Continued Use Of Cash Management System</u>**

2. The Debtors are authorized to continue using the Cash Management System to manage their cash, to pay intercompany payables, to extend intercompany credit, and to otherwise transfer funds by and among the Debtors consistent with past practices and in accordance with the Management Agreement.

3. The Debtors shall maintain records of all transfers within the Cash Management System so that all transfers and transactions shall be adequately and promptly documented in, and ascertainable from, the Debtors' books and records, to the same extent as maintained prior to the commencement of these Chapter 11 Cases.

4. All banks at which the Debtors maintain bank accounts (the "<u>Banks</u>"), including, without limitation, those accounts listed on <u>Exhibit A</u> attached hereto (collectively with any and all other bank accounts maintained by the Debtors, the "<u>Bank Accounts</u>"), are authorized and directed to (a) continue to administer, service, and maintain the Bank Accounts as such accounts were administered, serviced, and maintained prior to the Petition Date, without interruption and in the usual and ordinary course and (b) to pay any and all checks, drafts, wires, automated clearinghouse transfers, electronic fund transfers, or other items presented, issued, or drawn on the Bank Accounts (collectively, the "<u>Debits</u>") on account of a claim arising on or after the Petition Date so long as there are sufficient funds in the relevant Bank Accounts.

5. The Banks are restrained and prohibited from honoring any Debit presented, issued, or drawn on any Bank Account on account of a claim arising prior to the Petition Date (a "Prepetition Debit") unless the payment of such claim: (a) has been authorized by an order of this Court, (b) has been directed by the Debtors and not otherwise prohibited by a "stop payment" request received by the relevant Bank from the Debtors, and (c) is supported by sufficient funds in the relevant Bank Account.

6. Subject to the provisions of this Order, the Banks are authorized and directed to rely on the representations of the Debtors as to which Debits are authorized to be honored or dishonored, whether or not such Debits are dated prior to, on, or subsequent to the Petition Date, and whether or not the Bank believes the payment is authorized by an order of the Court. To the extent that the Debtors direct that any Debit be dishonored, the Debtors may issue replacement Debits consistent with the orders of this Court.

7. Each Bank that maintains one or more Bank Accounts shall implement reasonable handling procedures to effectuate the terms of this Order. No Bank that implements such handling procedures shall be liable to the Debtors or their estates, or otherwise held in violation of this Order, for honoring a Prepetition Debit or other Debit (a) at the direction of the Debtors to honor such Prepetition Debit or other Debit, (b) in the good faith belief that the Court has authorized that such Prepetition Debit or other Debit be honored, or (c) as a result of an innocent mistake made despite implementation of such handling procedures.

8. The Debtors are authorized to implement such changes to the Cash Management System as the Debtors may deem necessary or appropriate, including, without limitation, closing any of the Bank Accounts or opening any additional Bank Accounts (the "New Accounts"), wherever the Debtors deem that such accounts are needed or appropriate, and

whether or not the banks in which such accounts are opened are designated depositories in the District of Delaware; provided that (a) any New Account shall be with a bank that is organized under the laws of the United States of America or any state therein and that is insured by the Federal Deposit Insurance Corporation or the Federal Savings and Loan Insurance Corporation and (b) the Debtors shall provide the U.S. Trustee with notice of any New Accounts. The Banks are authorized to honor the Debtors' requests to open or close (as the case may be) such Bank Account(s).

9. The relief, rights, and responsibilities provided for in this Order shall be deemed to apply to any and all Bank Accounts maintained in the Debtors' names, whether or not such Bank Accounts are listed on Exhibit A attached hereto and including, without limitation, any New Accounts.

## Continued Use Of Bank Accounts

10. The requirements of the U.S. Trustee Guidelines that the Debtors close all existing bank accounts and open new debtor in possession accounts are hereby waived. Further, the requirements of the U.S. Trustee Guidelines that the Debtors establish specific bank accounts for tax payments are hereby waived.

11. The Bank Accounts are deemed debtor in possession accounts. The Debtors are authorized, but not directed, to maintain and use the Bank Accounts in the same manner and with the same account numbers, styles and document forms as those employed prior to the Petition Date (or, the case of any New Account now in existence, as are currently employed), including, without limitation: (a) to deposit funds in, and withdraw funds from, the Bank Accounts by all usual means, including checks, wire transfers, and other Debits, (b) to pay postpetition ordinary course bank fees in connection with the Bank Accounts, (c) to perform

their obligations under the documents and agreements governing the Bank Accounts, (d) to treat the Bank Accounts for all purposes as accounts of the Debtors in their capacities as debtors in possession.

### Continued Use Of Business Forms And Checks

12.     The Debtors are authorized to continue using all checks and other banking forms substantially in the forms existing immediately prior to the Petition Date, without reference to the Debtors' status as debtors in possession.

### Intercompany Transactions And Intercompany Claims

13.     The Debtors are authorized to continue to maintain their intercompany business relationships and to undertake transactions between each other in the ordinary course, consistent with past practice, and in accordance with the Management Agreement.

### Interim Waiver of Investment and Deposit Requirements

14.     The Debtors are authorized to invest and deposit funds in accordance with the Debtors' established investment and deposit practices, guidelines and the Management Agreement, all in effect as of the commencement of these cases (as described in the Motion) and, to the extent that such investment and deposit practices and guidelines are not consistent with the requirements of section 345(b) of the Bankruptcy Code, such requirements are waived for the period from the date of entry of this order and for thirty (30) days thereafter.

### Other Matters

15.     The requirements of Bankruptcy Rule 6004(a) are waived.

16.     Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry hereof.

17. The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion.

18. This Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.

19. The Debtors shall serve a copy of this Order on all Banks within five (5) business days of the entry of this Order.

Dated: Wilmington, Delaware
    _____ ___, 2009

           _____
           UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT A

## Debtor Bank Accounts

## Pacific Ethanol Holding Co. LLC

| | | | | |
|---|---|---|---|---|
| **Amarillo National Bank** | PEHC | Operating Account | xxx872 | Active |
| **Address:** 410 S. Taylor | PEHC | Revenue Account | xxx864 | Active |
| PO Box 1 | | | | |
| Amarillo, TX 79105 | | | | |
| Darren Jenks, VP (806) | | | | |
| **Contacts:** 378-8339 | | | | |
| Sally Frierson, (806) | | | | |
| 378-8230 | | | | |

| | | | | |
|---|---|---|---|---|
| **US Bank** | PECOL | Escrow Account | xxxx60000 | Active |
| 111 SW Fifth Avenue, | | *Note Acct Title per statement:* | | |
| **Address:** Sixth Floor | | *Pacific Ethanol Columbia LLC/Tidewater Barge Lines* | | |
| | | *Inc/Tidewater Terminal Company Inc Escrow* | | |
| Portland, OR 97204 | | | | |
| Cheryl K Nelson (503) | | | | |
| **Contacts:** 275-5708 | | | | |