## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---

In re:

PACIFIC ETHANOL HOLDING CO. LLC,
et al.,

Debtors.[1]

)
)
)
)
)
)
)
)
)
)

Case No.

Chapter 11
Joint Administration Pending

---

## MOTION FOR ORDER UNDER 11 U.S.C. §§ 105(A) AND 366 (I) PROHIBITING UTILITY COMPANIES FROM ALTERING OR DISCONTINUING SERVICE ON ACCOUNT OF PREPETITION INVOICES, (II) APPROVING DEPOSIT AS ADEQUATE ASSURANCE OF PAYMENT, AND (III) ESTABLISHING PROCEDURES FOR RESOLVING REQUESTS BY UTILITY COMPANIES FOR ADDITIONAL ASSURANCE OF PAYMENT

The debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors") hereby move for entry of an order, under section 366 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended (the "Bankruptcy Code"), (i) prohibiting the Utility Companies (as defined below) from altering or discontinuing service on account of prepetition invoices, (ii) approving the adequate assurance of postpetition payment to be provided to the Utility Companies through the establishment of the Adequate Assurance Deposit (as defined below), and (iii) establishing procedures for resolving any subsequent requests by the Utility Companies for additional adequate assurance of payment (the "Motion"). In support of the Motion, the Debtors rely upon and incorporate by reference the Declaration of Christopher W. Wright in Support of First Day Pleadings (the "Wright Declaration"). In further support of the Motion, the Debtors, by and through their undersigned counsel, respectfully represent:

---

[1] The Debtors consist of: Pacific Ethanol Holding Co. LLC (EIN: XX-XXX6981); Pacific Ethanol Madera LLC (EIN: XX-XXX3339); Pacific Ethanol Columbia, LLC (EIN: XX-XXX9392); Pacific Ethanol Stockton LLC (EIN: XX-XXX8349); Pacific Ethanol Magic Valley, LLC (EIN: XX-XXX7391). Pacific Ethanol Holding Co. LLC is the sole member of each of the other Debtors. The mailing address for Pacific Ethanol Holding Co. LLC is 400 Capitol Mall, Suite 2060, Sacramento, CA 95814.

## JURISDICTION

1.     This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105(a) and 366 of the Bankruptcy Code.

## BACKGROUND

2.     On the date hereof (the "Petition Date"), Pacific Ethanol Holding Co. LLC ("PE HoldCo") and four (4) of its direct wholly-owned subsidiaries each commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors and debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors have requested that these chapter 11 cases (the "Chapter 11 Cases") be jointly administered.

3.     No creditors' committee has been appointed in these Chapter 11 Cases by the United States Trustee. No trustee or examiner has been appointed in any of the Debtors' Chapter 11 Cases.

## COMPANY BACKGROUND

4.     The Debtors consist of four limited liability companies, each of whom owns an ethanol plant (each a "Plant LLC" and collectively, the "Plant LLCs") with current combined ethanol production capacity of over 200 million gallons per year ("MGY"), and PE HoldCo as owner/holding company for the Plant LLCs. Two of the ethanol plants are located in California, one is located in Idaho and one is located in Oregon. Due to economic and financial constraints, only the ethanol plant located in Oregon is operating at the present time. Prior to the filing of the Chapter 11 Cases, the Debtors were the production facilities for Pacific Ethanol, Inc.

("PEI") a public company, and its subsidiaries (collectively the "PEI Group"). As part of the PEI Group, the Plant LLCs were managed by PEI and the ethanol and its co-products, including wet distillers grain ("WDG"), produced at the ethanol plants were marketed and sold to customers[2] primarily in California, Nevada, Arizona, Oregon, Colorado, Idaho and Washington by PEI Group affiliates under arms-length commercial contracts as more fully described below. The ethanol plants were built at their locations as part of a destination business model, whereby each respective ethanol plant achieves lower process and transportation costs by servicing local markets for both ethanol and WDG. The ethanol plants are as follows:

- **Madera Plant**--located in Madera, California, commenced operations in October 2006 and has an annual production capacity of up to 40 MGY.

- **Boardman Plant**--located in Boardman, Oregon, commenced operation in September 2007 and has an annual production capacity of up to 40 MGY.

- **Magic Valley Plant**--located in Burley, Idaho, (Magic Valley) commenced operations in April 2008 and has an annual production capacity of up to 60 MGY.

- **Stockton Plant**--located in Stockton, California, commenced operations in September 2008 and has an annual production capacity of 60 MGY.

5.      As indicated above, at the present time only the Boardman Plant is in operation. The Madera, Magic Valley and Stockton Plants are in "cold shut down" with no current business operations.

**Prepetition Capital Structure**

6.      As of the Petition Date, the aggregate principal amount of the Debtors' secured indebtedness was approximately $247,307,091 plus accrued and unpaid interest, fees and

---

[2]      The ethanol is sold to gasoline refining and distribution companies, while the WDG is sold to dairy farm operators and animal feed distributors for consumption by farm animals, including dairy cows and beef cattle.

other costs and consisted of, among other things, construction/project financing, term loans, a revolving loan facility and a note payable.

## Events Leading to a Chapter 11 Filing

7.     The Debtors' liquidity is materially affected by uncertain commodity prices for corn, natural gas and ethanol. Corn and ethanol prices have been highly volatile, do not necessarily move in the same direction (i.e., high corn prices do not necessarily result in high ethanol prices) and are impacted by a number of factors beyond the Debtors' control. Ethanol prices are generally influenced by the supply and demand for gasoline, the availability of substitutes and the effect of related laws and regulations. By contrast, corn prices are not significantly related to gasoline supply and demand; rather the availability and price of corn are subject to wide fluctuations due to unpredictable factors such as weather conditions during the corn growing season, crop yields, governmental policy with respect to agriculture and international supply and demand. Additionally, the Debtors are also impacted by other major costs including natural gas, transportation, and the purchase price of ethanol from other producers, which in turn are also highly volatile and difficult to forecast. During the latter part of 2008, the price of ethanol declined precipitously causing the Debtors' gross margins to decrease. In addition to decreasing margins, operating costs increased as a result of the construction of three additional ethanol plants in 2007 and 2008.

8.     Ultimately, sizeable fluctuations in the price of corn, natural gas and ethanol, coupled with obligations to service the Debtors' debt in the face of a continued lack of liquidity in the credit markets since 2007 and the inability to raise additional investment capital from depressed equity markets, have precipitated these Chapter 11 Cases.

9. For a more complete description of the Debtors' prepetition capital structure and intercompany structure and operations, reference is made to the Wright Declaration.

## RELIEF REQUESTED

10. In connection with the operation of their business and management of their properties, the Debtors obtain services ("Utility Services") from various providers of Utility Services (each a "Utility Company" and, collectively, the "Utility Companies").[3] By this Motion, the Debtors seek entry of interim and final orders (a) prohibiting the Utility Companies from altering or discontinuing service on account of unpaid prepetition invoices, (b) approving the Adequate Assurance Deposit (as defined below) as providing Utilities Companies with "adequate assurance of payment" under section 366 of the Bankruptcy Code and deeming all utilities entitled to such assurance of payment under section 366 of the Bankruptcy Code to have received adequate assurance of payment pursuant to section 366; and (c) approving the Additional Adequate Assurance Procedures (as defined below) set forth below as the method for resolving disputes regarding adequate assurance of payment. The Debtors request the immediate entry of an interim order, to be followed by a final hearing (the "Final Hearing") on notice to the Utility Companies identified on Exhibit A to be held within twenty-five (25) days of the Petition Date, and entry of a final order at the conclusion of that hearing.

---

[3] The Utility Companies known and identified by the Debtors to date are listed on Exhibit A hereto. While the Debtors have used their best efforts to list their Utility Companies in Exhibit A, it is possible that certain Utility Companies may have been inadvertently omitted from the list. Accordingly, the Debtors reserve the right, under the terms and conditions of this Motion and without further order of the Court, to amend Exhibit A to add any Utility Companies that were omitted therefrom and to request that the relief requested herein apply to all such entities as well. In addition, the Debtors reserve the right to argue that (a) any of the entities now or hereafter listed in Exhibit A are not "utilities" within the meaning of section 366 of the Bankruptcy Code, and (b) any such entity is compelled by contractual obligation, state or local law, or otherwise, to continue to furnish services to the Debtors notwithstanding the Debtors filing for relief under chapter 11 of the Bankruptcy Code.

## BASIS FOR RELIEF

11.     As of the Petition Date, over 11 Utility Companies provide Utility Services to the Debtors at their various operational facilities. The Utility Companies service the Debtors' ethanol plants as well as the Debtors' administrative offices, branch offices, and other offices supporting their operations. On average, prior to the Petition Date, the Debtors spent approximately $2.5 million each month on utility costs and had a consistent history of making timely payment for Utility Services. The Debtors are not currently aware of any past due amounts. However, due to the timing of the filings in relationship to the Utility Companies' billing cycles, utility costs may have been invoiced to the Debtors for which payment is not yet due. In addition, the Debtors have incurred utility costs for services provided since the end of the last billing cycle that have not been invoiced to the Debtors.

12.     The services provided by the Utility Companies are crucial to the continued operations of the Debtors. If the Utility Companies refuse or discontinue service, even for a brief period, the Debtors' could be forced to cease operations at their numerous ethanol plants, and activities at the Debtors' executive and administrative offices could be severely disrupted.

13.     By this Motion, the Debtors preserve the protections that the Utility Companies have under the Bankruptcy Code, while affording the Debtors an opportunity to provide and negotiate adequate protection without facing the threat of imminent termination of Utility Services. In particular, the Debtors request approval of certain procedures that balance the protections afforded the Utility Companies under section 366 of the Bankruptcy Code and the Debtors' need for continuous and uninterrupted Utility Services.

## A.    The Proposed Adequate Assurance

14.    The Debtors intend to pay all postpetition obligations owed to the Utility Companies in a timely manner using operating revenue and in accordance with the DIP Budget (as defined in the Wright Declaration).    Moreover, the Debtors expect that availability under their proposed debtor in possession financing facility will be more than sufficient to pay such postpetition utility obligations.

15.    Nevertheless, to provide additional assurance of payment for future services to the Utility Companies, the Debtors will deposit $692,644.00, which amount represents approximately two weeks of the Debtors' estimated aggregate Utility Services net of any deposits already in possession of the Utility Companies, into a newly created, segregated, interest-bearing account, within twenty (20) business days of the Petition Date (the "Adequate Assurance Deposit").    The Adequate Assurance Deposit shall be maintained with a minimum balance equal to the Debtors' estimated two-week cost of Utility Services, which may be adjusted by the Debtors to account for the termination of Utility Services by the Debtors or other arrangements with respect to adequate assurance of payment reached with a Utility Company.

16.    To the extent the Debtors become delinquent with respect to a Utility Company's account, such Utility Company shall file a notice of such delinquency (the "Delinquency Notice") with the Court and serve such notice on (a) the Debtors, (b) counsel to the Debtors, (c) counsel to the official committee of unsecured creditors, if one is appointed, and (d) counsel to the United States Trustee (collectively, the "Parties In Interest").    If the Debtors have not cured such delinquency or no Party In Interest has objected to the Delinquency Notice within ten (10) days of the receipt of the Delinquency Notice, then the Debtors shall remit to such Utility Company from the Adequate Assurance Deposit the lesser of (i) the amount

allocated in the Adequate Assurance Deposit for such Utility Company's account and (ii) the amount of postpetition charges claimed as delinquent in the Delinquency Notice.

17.     The Debtors submit that the Adequate Assurance Deposit, coupled with the Debtors' ability to pay for future utility services in the ordinary course of business, based upon their debtor in possession financing facility and cash flow from operations, constitutes adequate assurance of future payment to the Utility Companies to satisfy the requirements of Section 366 of the Bankruptcy Code.

## B.     The Additional Adequate Assurance Request Procedures

18.     Notwithstanding the adequate assurance proposed herein, the Debtors anticipate that certain Utility Companies may not find the Adequate Assurance Deposit, coupled with the Debtors' ability to pay for future utility services in the ordinary course of business, "satisfactory" and, thus, may request additional adequate assurance of payment pursuant to section 366(c)(2) of the Bankruptcy Code.  Accordingly, the Debtors propose that such requests be addressed pursuant to the following procedures (the "Additional Adequate Assurance Procedures"):

(a)     In the event that a Utility Company maintains that the Adequate Assurance Deposit is not satisfactory adequate assurance of payment as contemplated by section 366(c)(2) of the Bankruptcy Code, the Utility Company must serve a request (an "Additional Adequate Assurance Request") for adequate assurance on the Debtors and their counsel at the following addresses: (i) Pacific Ethanol Holding Co. LLC., 400 Capitol Mall, Suite 2060, Sacramento, CA (Attn: Christopher W. Wright) and (ii) proposed counsel to the Debtors, Cooley Godward Kronish, LLP, 1114 Avenue of the Americas, New York, NY 10036 (Attn: Lawrence C. Gottlieb and Richard S. Kanowitz) and Potter Anderson & Corroon LLP, 1313 N. Market St., 6th Fl., Wilmington, DE 19801 (Attn: Steven M. Yoder and Jeremy W. Ryan), so that it is actually received within thirty (30) days after the Petition Date "Additional Adequate Assurance Request Deadline").

(b)     Any Additional Adequate Assurance Request must: (i) be made in writing, (ii) set forth the location for which Utility Services are provided,

(iii) include a summary of the Debtors' payment history relevant to the affected accounts, including any security deposit, (iv) set forth what the Utility Company would accept as satisfactory adequate assurance of payment, (v) explain why the requesting Utility Company believes the proposed Adequate Assurance Deposit is not adequate assurance as future payment and (vi) provide a fax and electronic mail address to which the Debtors may respond to the Additional Adequate Assurance Request.

(c)     The Debtors shall have until twenty-five (25) days after the Additional Adequate Assurance Request Deadline (the "Resolution Period") to negotiate and resolve the requesting Utility Company that serves an Additional Adequate Assurance Request. The Debtors and the applicable Utility Company also may agree to extend the Resolution Period.

(d)     Without further order of the Court, the Debtors may enter into agreements granting additional adequate assurance to a Utility Company serving a timely Additional Adequate Assurance Request, and without further Order of the Court, if the Debtors, in their discretion, determine that the Additional Adequate Assurance Request is reasonable or if the parties negotiate alternate consensual provisions.

(e)     If the Debtors determine that an Additional Adequate Assurance Request is not reasonable and are not able to reach an alternative resolution with the Utility Company during the Resolution Period, the Debtors, during or immediately after the Resolution Period, will request a hearing before the Court to determine the adequacy of assurance of payment with respect to a particular Utility Company, pursuant to section 366(c)(3) of the Bankruptcy Code (the "Determination Hearing").

(f)     Pending resolution of any such Determination Hearing, the Utility Company shall be prohibited from altering, refusing, or discontinuing services to the Debtors on account of unpaid prepetition invoices or any objections to the Debtors' Adequate Assurance Deposit, or due to the commencement of these cases.

(g)     Any Utility Company that does not serve an Additional Adequate Assurance Request by the Additional Adequate Assurance Request Deadline shall be deemed to have received adequate assurance of payment that is satisfactory to such Utility Company within the meaning of section 366(c)(2) of the Bankruptcy Code.

19.     The Debtors seek authority, in their sole discretion, to amend Exhibit A attached hereto to add or delete any Utility Company. To the extent that the Debtors subsequently identify additional providers of Utility Services, the Debtors propose to have the

terms of the order apply to any such subsequently identified Utility Company. The Debtors will serve a copy of this Motion and the order approving the Motion on such subsequently identified Utility Company, along with an amended Exhibit A listing such Utility Company, such Utility Company would then have thirty (30) days from service of the Motion and order to make an Additional Adequate Assurance Request.

20.     In the event that any Utility Company, including a subsequently added Utility Company, files and/or serves an Additional Adequate Assurance Request after the Additional Adequate Assurance Request Deadline, or, if applicable, the subsequent deadline as proposed above, such request shall be treated as a request under section 366(c)(3) of the Bankruptcy Code and shall be granted, if at all, only after the Utility Company making such request schedules such request for hearing, on notice, in accordance with the provisions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.

21.     The Debtors maintain that the relief requested herein strikes a fair balance between the rights of the Utility Companies and the rights of the Debtors under the Bankruptcy Code and the need for the Debtors to continue to receive, for the benefit of their estates, the Utility Services upon which their businesses and operations depend. The Debtors do not believe that the Utility Companies will be prejudiced by the proposed Adequate Assurance Deposit, the uninterrupted continuation of the Utility Services, and the approval of the Additional Adequate Assurance Procedures.

22.     The Debtors request a Final Hearing on this Motion to be held within twenty-five (25) days of the Petition Date to ensure that, if a Utility Company argues it can unilaterally refuse service to the Debtors on the thirty-first (31st) day after the Petition Date, the Debtors will have the opportunity, to the extent necessary, to request that the Court make such

modifications to the Additional Adequate Assurance Procedures in time to avoid any potential termination of utility service.

## APPLICABLE AUTHORITY

23.     Section 366(a) of the Bankruptcy Code provides:

> Except as provided in subsections (b) and (c) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.

11 U.S.C. § 366(a).

24.     The policy underlying section 366 of the Bankruptcy Code is to protect debtors from the termination of utility service upon the filing of a bankruptcy case, while at the same time providing utility companies with adequate assurance that the debtor will pay for postpetition services. See H.R. Rep. No. 95-595, at 350 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6306, see also Jones v. Boston Gas Co., 369 B.R. 745, 748 (B.A.P. 1st Cir. 2007) ("The purpose of §366 is to prevent the threat of termination from being used to collect pre-petition debts while not forcing the utility to provide services for which it may never be paid."). As set forth herein, this policy is furthered by the relief requested through this Motion.

25.     Pursuant to section 366(c)(2) of the Bankruptcy Code, a utility is permitted to alter, refuse, or discontinue utility service, if the utility does not receive "during the 30-day period beginning on the date of the filing of the petition . . . adequate assurance of payment for utility service that is satisfactory to the utility." 11 U.S.C. § 366(c)(2). While the form of adequate assurance of payment may be limited under subsection 366(c) to the types of security enumerated in subsection 366(c)(1)(A), the amount of the deposit or other form of security remains fully within the reasonable discretion of the Court. Section 366(c) gives courts

the same discretion they had under section 366(b) to determine the amount of payment necessary to provide adequate assurance. Compare 11 U.S.C. § 366(b) ("On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment."), with 11 U.S.C. § 366(c)(3)(A) ("On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance payment under paragraph (2).").

26.    As part of the Bankruptcy Abuse and Consumer Protection Act of 2005 ("BAPCPA"), Congress had the opportunity to establish a minimum adequate assurance amount that would be required in each case, but did not. Instead, Congress vested such discretion with the courts to determine the appropriate level of adequate assurance required in each case.

27.    Moreover, as case law has emphasized, the type of arrangement that constitutes adequate assurance of future payment involves a fact-intensive inquiry, determined on a case-by-case basis. See In re Anchor Glass Container Corp., 342 B.R. 872, 875 (Bankr. M.D. Fla. 2005). Courts have recognized that adequate assurance of payment does not constitute an absolute guarantee of payment. See, e.g., id.; In re Astle, 338 B.R. 855, 861 (Bankr. D. Idaho 2006); In re Steineback, 303 B.R. 634, 641 (Bankr. D. Ariz. 2004) ("Adequate assurance of payment is not . . . absolute assurance. The key to achieving the balance required by § 366 is not to confuse adequate assurance with adequate protection, which must be provided to a creditor under 11 U.S.C. § 361."); In re Adelphia Bus. Solutions, Inc., 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002); see also In re Caldor, Inc.-N.Y., 199 B.R. 1, 3 (S.D.N.Y. 1996) (section 366(b) "does not require an "absolute guarantee of payment"), aff'd sub nom. Virginia Elec. & Power Co. v. Caldor, Inc.-NY, 117 F.3d 646 (2d Cir. 1997); Mass. Elec. Co. v. Keydata Corp. (In re Keydata Corp.), 12 B.R. 156, 158 n.2 (B.A.P. 1st Cir. 1981) (recognizing that adequate assurance does not

entitle utilities to "higher protection in chapter 11 than they enjoy in regular dealings with customers outside the bankruptcy court").

28.    Therefore, section 366 does not give utility companies a blank check or the right to extract from the Debtors whatever amount of adequate assurance they might desire. Nor does section 366 entitle utility companies to receive full collateral for their credit exposure or any other form of guarantee against all risk of potential nonpayment. In some cases, a court may even find that no adequate assurance of payment is necessary. <u>See</u> <u>Virginia Elec. & Power Co. v. Caldor, Inc.-NY</u>, 117 F.3d 646, 650 (2d Cir. 1997) ("[W]e agree . . . that a bankruptcy court's authority to 'modify' the level of the 'deposit or other security,' provided for under § 366(b), includes the power to require no 'deposit or other security' where none is necessary to provide a utility supplier with 'adequate assurance of payment.'").

29.    The Debtors submit that the Adequate Assurance Deposit provides more than adequate assurance of future payment. Furthermore, contemporaneously herewith, the Debtors are seeking approval of a debtor in possession financing facility that will enable them to pay their operating costs, including utility costs, as they come due. The Debtors anticipate having sufficient resources to pay, and intend to pay all valid postpetiton obligations for Utility Services in a timely manner. In addition, the Debtors have significant incentive to stay current on their utility obligations as they come due because of their reliance on the Utility Services for the operation of their business. These factors, which the Court may—and should—consider when determining the amount of any adequate assurance payments, justify a finding that the Adequate Assurance Deposit is more than sufficient to assure the Utility Companies of future payments.

30. Conceivably, under section 366(c)(2) of the Bankruptcy Code, the Debtors could receive a demand from a Utility Company at the end of such thirty-day period and be compelled to accede to the demand immediately or face termination of critical Utility Services. In order to avoid such a drastic result, the Debtors seek the approval of the Additional Adequate Assurance Procedures set forth herein.

31. The proposed Additional Adequate Assurance Procedures are necessary for the Debtors to carry out their reorganization efforts. Without them, the Debtors would be either forced to seek emergency temporary restraining orders each and every time a Utility Company threatened to suspend performance, or to address numerous requests by Utility Companies in an unorganized manner at a critical period in their efforts to reorganize.

32. By establishing the Additional Adequate Assurance Procedures, the Debtors seek to implement an orderly process to determine the amount of assurance of payment that is adequate. If a Utility Company disagrees with the Debtors' analysis, the Additional Adequate Assurance Procedures will enable the parties to negotiate and, if necessary, seek Court intervention without jeopardizing the Debtors' continuing operations. The orderly process contemplated by the Additional Adequate Assurance Procedures, therefore, is necessary for a smooth transition by the Debtors into chapter 11.

33. The Court also has the authority to grant the relief sought in this Motion pursuant to section 105(a) of the Bankruptcy Code. Section 105(a) provides that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The purpose of that section is to grant bankruptcy courts the authority to take actions necessary to exercise their power under the Bankruptcy Code.

34. The Debtors' proposed method of furnishing adequate assurance of payment for post-petition Utility Service is not prejudicial to the rights of any Utility Company, and is in the best interest of the Debtors' estates. This Court has granted similar relief in other cases following the BAPCPA amendments. See, e.g., In re Smurfit-Stone Container Corp., Case No. 09-10235 (Bankr. D. Del. Jan. 27, 2009) (Shannon, J.) [D.I. 61]; In re Nortel Networks Inc., Case No. 09-10138 (Bankr. D. Del. Jan. 15, 2009) (Gross, J.) [D.I. 46]; In re VeraSun Energy Corp., Case No. 08-12606 (Bankr. D. Del. Dec. 2, 2008) (Shannon, J.) [D.I. 262]; In re Boscov's, Inc., Case No. 08-11637 (Bankr. D. Del. Sept. 10, 2008) (Gross, J.) [D.I. 298]; In re Goody's Family Clothing, Inc., Case No. 08-11133 (Bankr. D. Del. June 10, 2008) (Sontchi, J.) [D.I. 62]; In re Sharper Image Corp., Case No. 08-10322 (Bankr. D. Del. Mar. 12, 2008) (Gross, J.) [D.I. 245]; In re Hancock Fabrics, Inc., Case No. 07-10353 (Bankr. D. Del. Mar. 22, 2007) (Shannon, J.) [D.I. 299].

35. To successfully implement the foregoing, to the extent that any aspect of the relief sought herein constitutes a use of property under section 363(b) of the Bankruptcy Code, the Debtors seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the ten-day stay under Bankruptcy Rule 6004(h).

36. Bankruptcy Rule 6003 provides that to the extent relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may approve a motion to "pay all or part of a claim that arose before the filing of the petition" prior to twenty (20) days after the Commencement Date. Fed. R. Bankr. P. 6003. As described above and in the Wright Declaration, uninterrupted service from the Utility Companies is essential to the Debtors' continued operation and successful sale of substantially all of their assets. The Debtors submit that the relief requested in this Motion is necessary to avoid immediate and irreparable harm to

the Debtors, as described herein, and that cause exists under Bankruptcy Rule 6003 for immediate authority to establish the Adequate Assurance Procedures.

## NOTICE

37.     Notice of this Motion will be given to: (a) the Office of the United States Trustee for the District of Delaware; (b) all required government entities; (c) counsel to the Debtors' prepetition secured lenders; (d) counsel to any provider of debtor-in-possession financing; (e) the parties included on the Debtors' list of twenty (20) largest unsecured creditors; and (f) the Utility Companies identified on <u>Exhibit A</u> (collectively, the "<u>Initial Notice Parties</u>"). The Debtors submit that, under the circumstances, no other or further notice is required.

## NO PRIOR REQUEST

38.     No previous request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court (i) enter the proposed interim order, substantially in the form annexed hereto, granting the relief requested in the Motion and (ii) such other and further relief to the Debtors as the Court may deem proper.

Dated:      Wilmington, Delaware
           May 17, 2009

                                   Respectfully Submitted,

Steven M. Yoder (DE Bar No. 3885)
Jeremy W. Ryan (DE Bar No. 4057)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, Delaware 19899-0951
Phone: (302) 984-6000
Facsimile: (302) 984-1192

- and -

Lawrence C. Gottlieb (LB 2565)
Richard S. Kanowitz (RK 0677)
COOLEY GODWARD KRONISH LLP
1114 Avenue of the Americas
New York, NY 10036
Phone: (212) 479-6000
Facsimile: (212) 479-6275

*Proposed Counsel for Debtors and Debtors in Possession*

# EXHIBIT A

## Pacific Ethanol Holding Co. LLC, *et al.*

### List of Utilities

| Utility Vendor Name | Address | Type of Utility |
|---|---|---|
| Calif. Water Services | 1550 West Fremont St.<br>Suite 100<br>Stockton, CA 95203 | Water |
| Cascade Natural Gas Corp. | PO Box 24581<br>Seattle, WA 98124-0581 | Natural Gas Transportation |
| CenturyTel., Inc. | PO Box 4300<br>Carol Stream, IL 60197-4300 | Telephone |
| City of Burley | PO Box 1090<br>Burley, ID 83318 | Water |
| City of Stockton | 345 N. El Dorado Street Stockton,<br>CA 95202 | Waste Water |
| Iberdrola Renewables, Inc | 1125 N.W. Couch St.<br>Suite 700<br>Portland, OR 97209 | Natural Gas Supply |
| Intermountain Gas Company | PO Box 64<br>Boise, ID 83732 | Natural Gas Transportation |
| PG&E | PO Box 997300<br>Sacramento, CA 95899-7300 | Electricity |
| Port of Morrow | PO Box 200<br>Boardman, OR 97818 | Water & Waste Water |
| Umatilla Electric Cooperative | P.O. Box 1148<br>Hermiston, OR 97838 | Electricity |
| United Electric Co-op, Inc. | 1330 21st Street<br>Heyburn, ID 83336 | Electricity |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Case No. |
| | ) | |
| PACIFIC ETHANOL HOLDING CO. LLC, et al., | ) | Chapter 11 |
| | ) | Joint Administration Pending |
| | ) | |
| Debtors.[1] | ) | |
| | ) | Re: Docket No. _____ |
| | ) | |

**INTERIM ORDER UNDER BANKRUPTCY CODE SECTIONS 105(A) AND 366 (I) PROHIBITING UTILITY PROVIDERS FROM ALTERING OR DISCONTINUING SERVICE ON ACCOUNT OF PREPETITION INVOICES, (II) APPROVING DEPOSIT AS ADEQUATE ASSURANCE OF PAYMENT, AND (III) ESTABLISHING PROCEDURES FOR RESOLVING REQUESTS BY UTILITY COMPANIES FOR ADDITIONAL ASSURANCE OF PAYMENT**

Upon the motion (the "Motion")[2] of the Debtors for an interim and final order, under sections 105(a) and 366 of the Bankruptcy Code (i) prohibiting the Utility Companies from altering or discontinuing service on account of prepetition invoices, (ii) approving the adequate assurance of postpetition payment to be provided to the Utility Companies through the establishment of the Adequate Assurance Deposit, and (iii) establishing the Additional Adequate Assurance Procedures for resolving any Additional Adequate Assurance Requests under Bankruptcy Code section 366(c); and upon the Wright Declaration; and due and sufficient notice of the Motion having been given under the particular circumstances; and it appearing that no other or further notice need be provided; and it appearing that the relief requested by the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and after due deliberation thereon; and sufficient cause appearing therefor, it is hereby

---

[1]      The Debtors consist of: Pacific Ethanol Holding Co. LLC (EIN:  XX-XXX6981); Pacific Ethanol Madera LLC (EIN:  XX-XXX3339); Pacific Ethanol Columbia, LLC (EIN:  XX-XXX9392); Pacific Ethanol Stockton LLC (EIN:  XX-XXX8349); Pacific Ethanol Magic Valley, LLC (EIN:  XX-XXX7391).  Pacific Ethanol Holding Co. LLC is the sole member of each of the other Debtors.  The mailing address for Pacific Ethanol Holding Co. LLC is 400 Capitol Mall, Suite 2060, Sacramento, CA 95814.

[2]      Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.    The Motion is GRANTED on an interim basis, as set forth herein.

2.    Absent further order of this Court, the Utility Companies, including any subsequently added Utility Companies, are prohibited from altering, refusing, or discontinuing service to or discriminating against the Debtors on account of unpaid prepetition invoices or due to the commencement of these cases, or requiring the Debtors to pay a deposit or other security in connection with the provision of postpetition Utility Services, other than in accordance with the Additional Adequate Assurance Procedures contained herein.

3.    The Debtors shall, on or before twenty (20) business days after the Petition Date, deposit $692,644.00 (the "Adequate Assurance Deposit") into a newly created, segregated, interest-bearing account, for the purpose of providing each Utility Company adequate assurance of payment of its postpetition Utility Services to the Debtors. Such Adequate Assurance Deposit shall be held in escrow, pending further order of the Court. The Adequate Assurance Deposit shall be maintained with a minimum balance equal to the Debtors' estimated two-week cost of Utility Services, which may be adjusted by the Debtors to account for the termination of Utility Services by the Debtors or other arrangements with respect to adequate assurance of payment reached with any Utility Company.

4.    To the extent the Debtors become delinquent with respect to a Utility Company's account, such Utility Company shall file a notice of such delinquency (the "Delinquency Notice") with the Court and serve such notice on (a) the Debtors, (b) counsel to the Debtors, (c) counsel to the official committee of unsecured creditors, if one is appointed; and (d) counsel to the United States Trustee (collectively, the "Parties In Interest"). If the Debtors have not cured such delinquency or no Party In Interest has objected to the Delinquency Notice within ten (10) days of the receipt of the Delinquency Notice, then the Debtors shall remit to

such Utility Company from the Adequate Assurance Deposit the lesser of (i) the amount allocated in the Adequate Assurance Deposit for such Utility Company's account and (ii) the amount of postpetition charges claimed as delinquent in the Delinquency Notice.

5.     The Additional Adequate Assurance Procedures are hereby approved as follows:

(a)     In the event that a Utility Company maintains that the Adequate Assurance Deposit is not satisfactory adequate assurance of payment as contemplated by Bankruptcy Code section 366(c)(2), the Utility Company must serve a request (an "Additional Adequate Assurance Request") for adequate assurance on the Debtors and their counsel at the following addresses: (i) Pacific Ethanol Holding Co. LLC, 400 Capitol Mall, Suite 2060, Sacramento, CA (Attn: Christopher W. Wright) and (ii) proposed counsel to the Debtors, Cooley Godward Kronish, LLP, 1114 Avenue of the Americas, New York, NY 10036 (Attn: Lawrence C. Gottlieb and Richard S. Kanowitz) and Potter Anderson & Corroon LLP, 1313 N. Market St., 6th Fl., Wilmington, DE 19801 (Attn: Steven M. Yoder and Jeremy W. Ryan), so that it is actually received within thirty (30) days after the Petition Date "Additional Adequate Assurance Request Deadline").

(b)     Any Additional Adequate Assurance Request must: (i) be made in writing, (ii) set forth the location for which Utility Services are provided, (iii) include a summary of the Debtors' payment history relevant to the affected accounts, including any security deposit, (iv) set forth what the Utility Company would accept as satisfactory adequate assurance of payment, (v) explain why the requesting Utility Company believes the proposed Adequate Assurance Deposit is not adequate assurance as future payment and (vi) provide a fax and electronic mail address to which the Debtors may respond to the Additional Adequate Assurance Request.

(c)     The Debtors shall have until twenty-five (25) days after the Additional Adequate Assurance Request Deadline (the "Resolution Period") to negotiate and resolve the requesting Utility Company that serves an Additional Adequate Assurance Request. The Debtors and the applicable Utility Company also may agree to extend the Resolution Period.

(d)     Without further order of the Court, the Debtors may enter into agreements granting additional adequate assurance to a Utility Company serving a timely Additional Adequate Assurance Request, and without further Order of the Court, if the Debtors, in their discretion, determine that the Additional Adequate Assurance Request is reasonable or if the parties negotiate alternate consensual provisions.

(e)    If the Debtors determine that an Additional Adequate Assurance Request is not reasonable and are not able to reach an alternative resolution with the Utility Company during the Resolution Period, the Debtors, during or immediately after the Resolution Period, will request a hearing before the Court to determine the adequacy of assurance of payment with respect to a particular Utility Company, pursuant to section 366(c)(3) of the Bankruptcy Code (the "Determination Hearing").

(f)    Pending resolution of any such Determination Hearing, the Utility Company shall be prohibited from altering, refusing, or discontinuing services to the Debtors on account of unpaid prepetition invoices or any objections to the Debtors' Adequate Assurance Deposit, or due to the commencement of these cases.

(g)    Any Utility Company that does not serve an Additional Adequate Assurance Request by the Additional Adequate Assurance Request Deadline shall be deemed to have received adequate assurance of payment that is satisfactory to such Utility Company within the meaning of Bankruptcy Code section 366(c)(2).

6.    The Debtors are authorized, in their sole discretion, to amend Exhibit A attached hereto to add or delete any Utility Company. The Debtors shall serve a copy of the Motion and this Order on such subsequently identified Utility Companies. Such Utility Companies shall then have thirty (30) days from the service of the Motion and the Order to make an Additional Adequate Assurance Request.

7.    The inclusion or exclusion of any entity on or from Exhibit A or on or from any amended Exhibit A shall not constitute an admission that such entity is or is not a utility company within the meaning of Bankruptcy Code section 366. This Order specifically reserves the rights of the Debtors to argue that (a) any of the entities now or hereafter listed on Exhibit A are not "utilities" within the meaning of Bankruptcy Code section 366, and (b) any such entity is compelled by contractual obligation, state or local law, or otherwise, to continue to furnish services to the Debtors notwithstanding the Debtors' filing for relief under chapter 11 of the Bankruptcy Code.

8.     In the event that any Utility Company, including a subsequently added Utility Company, files and/or serves an Additional Adequate Assurance Request after the Additional Adequate Assurance Request Deadline, or, if applicable, the deadline established in paragraph 6 above, such request shall be treated as a request under Bankruptcy Code section 366(c)(3) and shall be granted, if at all, only after the Utility Company making such request schedules such request for hearing, on notice, in accordance with the provisions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.

9.     The Debtors are authorized to pay on a timely basis in accordance with their prepetition practices all undisputed invoices in respect to postpetition Utility Services rendered by the Utility Companies to the Debtors in accordance with the DIP Budget.

10.     A Utility Company shall be deemed to have adequate assurance of payment under Section 366 of the Bankruptcy Code unless and until (a) the Debtors, in their discretion, agree to an alternative assurance of payment with the Utility Company during the Resolution Period; or (b) this Court enters an order at the Final Hearing or any determination Hearing requiring that additional adequate assurance of payment be provided.

11.     A Final Hearing, if required, to consider the Motion and proposed final order is scheduled for _____ 2009 at _____ __.m. (Prevailing Eastern Time) before this Court. Any objections to the relief requested in the Motion must be filed with the Clerk of the Bankruptcy Court and served upon and received by: (i) proposed counsel for the Debtors, Cooley Godward Kronish LLP, 1114 Avenue of the Americas, New York, NY 10036 (Attn: Lawrence C. Gottlieb, Esq. and Richard S. Kanowitz, Esq.) and Potter Anderson & Corroon LLP, Hercules Plaza, 1313 North Market Street, 6th Floor, Wilmington, Delaware 19801 (Attn: Steven M. Yoder, Esq. & Jeremy W. Ryan, Esq.); (ii) the Office of the United States Trustee for

the District of Delaware, 844 King Street, Room 2207, Lockbox #35, Wilmington, DE 19899-0035; (iii) counsel to any official committees appointed in the Chapter 11 Cases, and (iv) counsel to any proposed provider of debtor-in-possession financing, on or before _____, 2009 at _:__ _._. (Prevailing Eastern Time). If no objections are filed to the Motion, the Court may enter the final order without further notice or hearing.

12.     The Debtors shall serve a copy of the Motion and this Order by United States mail, first class postage pre-paid, on (a) the Office of the United States Trustee for the District of Delaware; (b) all required governmental entities; (c) counsel to the Prepetition Lenders; (d) counsel to any provider of debtor-in-possession financing; (e) the parties included on the Debtors' list of twenty (20) largest unsecured creditors; and (f) the Utility Companies identified on Exhibit A (collectively, the "Initial Notice Parties").

13.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Order shall be effective and enforceable immediately upon entry hereof

14.     The Debtors shall serve a copy of this Order on each Utility Company listed on the Utility Service List within two business days of the date this Order is entered.

15.     Nothing in this Order or the Motion shall be deemed to constitute the assumption or adoption of any agreement under Bankruptcy Code section 365.

16.     The requirements of Rule 6003(b) are satisfied by the contents of the Motion or otherwise deemed waived

Dated: Wilmington, Delaware
          _____ _____, 2009

_____
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT A

## Pacific Ethanol Holding Co. LLC, *et al.*

## List of Utilities

| Utility Vendor Name | Address | Type of Utility |
|---|---|---|
| Calif. Water Services | 1550 West Fremont St.<br>Suite 100<br>Stockton, CA 95203 | Water |
| Cascade Natural Gas Corp. | PO Box 24581<br>Seattle, WA 98124-0581 | Natural Gas Transportation |
| CenturyTel., Inc. | PO Box 4300<br>Carol Stream, IL 60197-4300 | Telephone |
| City of Burley | PO Box 1090<br>Burley, ID 83318 | Water |
| City of Stockton | 345 N. El Dorado Street Stockton, CA 95202 | Waste Water |
| Iberdrola Renewables, Inc | 1125 N.W. Couch St.<br>Suite 700<br>Portland, OR 97209 | Natural Gas Supply |
| Intermountain Gas Company | PO Box 64<br>Boise, ID 83732 | Natural Gas Transportation |
| PG&E | PO Box 997300<br>Sacramento, CA 95899-7300 | Electricity |
| Port of Morrow | PO Box 200<br>Boardman, OR 97818 | Water & Waste Water |
| Umatilla Electric Cooperative | P.O. Box 1148<br>Hermiston, OR 97838 | Electricity |
| United Electric Co-op, Inc. | 1330 21st Street<br>Heyburn, ID 83336 | Electricity |