IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re:                                    )  Case No.
                                          )
PACIFIC ETHANOL HOLDING CO. LLC,          )  Chapter 11
et al.,                                   )  Joint Administration Pending
                                          )
                Debtors.[1]               )
                                          )
                                          )

## MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. §§ 105 AND 503(b), (I) CONFIRMING GRANT OF ADMINISTRATIVE EXPENSE STATUS TO OBLIGATIONS ARISING FROM PREPETITION DELIVERY OF GOODS RECEIVED WITHIN 20 DAYS OF THE COMMENCEMENT DATE OF THESE CHAPTER 11 CASES, (II) CONFIRMING GRANT OF ADMINISTRATIVE EXPENSE STATUS TO OBLIGATIONS ARISING FROM POSTPETITION DELIVERY OF GOODS AND SERVICES, AND (III) AUTHORIZING, BUT NOT DIRECTING, THE DEBTORS TO PAY SUCH OBLIGATIONS IN THE ORDINARY COURSE OF BUSINESS

The debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors") hereby move for entry of an order pursuant to 11 U.S.C. §§ 105 and 503(b) (the "Bankruptcy Code"), (i) confirming grant of administrative expense status to obligations arising from prepetition delivery of goods received within 20 days of the commencement date of these chapter 11 cases, (ii) confirming grant of administrative expense status to obligations arising from postpetition delivery of goods and services, and (iii) authorizing, but not directing, the Debtors to pay such obligations in the ordinary course of business (the "Motion"). In support of the Motion, the Debtors rely upon and incorporate by reference the Declaration of Christopher W. Wright in Support of First Day Pleadings (the "Wright Declaration"), filed concurrently

---

[1] The Debtors consist of: Pacific Ethanol Holding Co. LLC (EIN: XX-XXX6981); Pacific Ethanol Madera LLC (EIN: XX-XXX3339); Pacific Ethanol Columbia, LLC (EIN: XX-XXX9392); Pacific Ethanol Stockton LLC (EIN: XX-XXX8349); Pacific Ethanol Magic Valley, LLC (EIN: XX-XXX7391). Pacific Ethanol Holding Co. LLC is the sole member of each of the other Debtors. The mailing address for Pacific Ethanol Holding Co. LLC is 400 Capitol Mall, Suite 2060, Sacramento, CA 95814.

PAC/916551

herewith. In further support of the Motion, the Debtors, by and through their undersigned counsel, respectfully represent:

## JURISDICTION

1. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105 and 503(b)(9) of the Bankruptcy Code.

## BACKGROUND

2. On the date hereof (the "Petition Date"), Pacific Ethanol Holding Co. LLC ("PE HoldCo") and four (4) of its direct wholly-owned subsidiaries each commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors and debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors have requested that these chapter 11 cases (the "Chapter 11 Cases") be jointly administered.

3. No creditors' committee has been appointed in these Chapter 11 Cases by the United States Trustee. No trustee or examiner has been appointed in any of the Debtors' Chapter 11 Cases.

## COMPANY BACKGROUND

4. The Debtors consist of four limited liability companies, each of whom owns an ethanol plant (each a "Plant LLC" and collectively, the "Plant LLCs") with current combined ethanol production capacity of over 200 million gallons per year ("MGY"), and PE HoldCo as owner/holding company for the Plant LLCs. Two of the ethanol plants are located in California, one is located in Idaho and one is located in Oregon. Due to economic and financial constraints, only the ethanol plant located in Oregon is operating at the present time Prior to the

filing of the Chapter 11 Cases, the Debtors were the production facilities for Pacific Ethanol, Inc. ("PEI") a public company, and its subsidiaries (collectively the "PEI Group"). As part of the PEI Group, the Plant LLCs were managed by PEI and the ethanol and its co-products, including wet distillers grain ("WDG"), produced at the ethanol plants were marketed and sold to customers[2] primarily in California, Nevada, Arizona, Oregon, Colorado, Idaho and Washington by PEI Group affiliates under arms-length commercial contracts as more fully described below. The ethanol plants were built at their locations as part of a destination business model, whereby each respective ethanol plant achieves lower process and transportation costs by servicing local markets for both ethanol and WDG. The ethanol plants are as follows:

- **Madera Plant**--located in Madera, California, commenced operations in October 2006 and has an annual production capacity of up to 40 MGY.

- **Boardman Plant**--located in Boardman, Oregon, commenced operation in September 2007 and has an annual production capacity of up to 40 MGY.

- **Magic Valley Plant**--located in Burley, Idaho, (Magic Valley) commenced operations in April 2008 and has an annual production capacity of up to 60 MGY.

- **Stockton Plant**--located in Stockton, California, commenced operations in September 2008 and has an annual production capacity of 60 MGY.

5. As indicated above, at the present time only the Boardman Plant is in operation. The Madera, Magic Valley and Stockton Plants are in "cold shut down" with no current business operations.

---

[2] The ethanol is sold to gasoline refining and distribution companies, while the WDG is sold to dairy farm operators and animal feed distributors for consumption by farm animals, including dairy cows and beef cattle.

**Prepetition Capital Structure**

6. As of the Petition Date, the aggregate principal amount of the Debtors' secured indebtedness was approximately $247,307,091 plus accrued and unpaid interest, fees and other costs and consisted of, among other things, construction/project financing, term loans, a revolving loan facility and a note payable.

**Events Leading to a Chapter 11 Filing**

7. The Debtors' liquidity is materially affected by uncertain commodity prices for corn, natural gas and ethanol. Corn and ethanol prices have been highly volatile, do not necessarily move in the same direction (i.e., high corn prices do not necessarily result in high ethanol prices) and are impacted by a number of factors beyond the Debtors' control. Ethanol prices are generally influenced by the supply and demand for gasoline, the availability of substitutes and the effect of related laws and regulations. By contrast, corn prices are not significantly related to gasoline supply and demand; rather the availability and price of corn are subject to wide fluctuations due to unpredictable factors such as weather conditions during the corn growing season, crop yields, governmental policy with respect to agriculture and international supply and demand. Additionally, the Debtors are also impacted by other major costs including natural gas, transportation, and the purchase price of ethanol from other producers, which in turn are also highly volatile and difficult to forecast. During the latter part of 2008, the price of ethanol declined precipitously causing the Debtors' gross margins to decrease. In addition to decreasing margins, operating costs increased as a result of the construction of three additional ethanol plants in 2007 and 2008.

8. Ultimately, sizeable fluctuations in the price of corn, natural gas and ethanol, coupled with obligations to service the Debtors' debt in the face of a continued lack of

liquidity in the credit markets since 2007 and the inability to raise additional investment capital from depressed equity markets, have precipitated these Chapter 11 Cases.

9. For a more complete description of the Debtors' prepetition capital structure and intercompany structure and operations, reference is made to the Wright Declaration.

## RELIEF REQUESTED

10. By this Motion, the Debtors seek, pursuant to sections 105 and 503(b) of the Bankruptcy Code, an order (i) confirming grant of administrative expense status to obligations arising from prepetition delivery of goods received within 20 days of the commencement date of these Chapter 11 Cases, (ii) confirming grant of administrative expense status to obligations arising from postpetition delivery of goods, supplies, products and materials, and (iii) authorizing, but not directing, the Debtors to pay such obligations in the ordinary course of business and in accordance with the DIP Budget (as defined in the Wright Declaration).

## BASIS FOR RELIEF

11. In the ordinary operation of the Debtors' businesses, the Debtors require certain goods, such as corn or other high-starch grains, chemical substances, natural gas, denaturants (e.g. unleaded gasoline or liquid natural gas), as well as other substances (collectively, the "Goods") to produce ethanol and its co-products. In connection with the purchase of these goods, the Debtors also require services (the "Services") from assorted subcontractors, suppliers, and vendors, including farmers and local grain elevators, chemical suppliers, gasoline suppliers, and natural gas suppliers (the "Vendors"). Prior to the commencement of these Chapter 11 Cases, the Debtors placed orders with certain Vendors for Goods. Certain of these Vendors delivered their respective Goods to the Debtors within 20 days of the filing date of these cases (the "20-Day Goods"). The Debtors estimate that approximately

$118,569 in respect of such 20-Day Goods will become due and payable during the next thirty (30) days.

### A. Goods Delivered Within 20 Days Of The Filing Date Are Administrative Expense Claims

12. As of the Petition Date, certain of the Vendors have not been paid for the 20-Day Goods. Because the Debtors rely so heavily on perishable inventory, timely delivery is critical to the Debtors' production of ethanol and distiller grains. Many Vendors may not be sophisticated in the complexities of chapter 11 cases and may require additional confirmation that payment for Goods and Services provided will occur in a timely manner. Should one of these Vendors decide not to deliver Goods during the course of these Chapter 11 Cases out of fear that it will not be paid, it would be difficult to replace such Vendors in the short term and consequently, the Debtors may have to shut down, or reduce production at their manufacturing plants. This, in turn, could cause a disruption of shipments to customers, resulting in irreparable harm to the Debtors and their estates. If the Debtors do not timely pay the Vendors and maintain the goodwill, the Debtors' relationship with the Vendors could be damaged and its business relationships could be undermined, thus, jeopardizing a successful reorganization.

13. The Vendors' claims relating to the 20-Day Goods are administrative expenses. The Debtors ordered the Goods prepetition, and the Vendors delivered the Goods to the Debtors within 20 days of the commencement date of these cases. The Debtors have not paid for the 20-Day Goods as of the Petition Date. The Debtors believe that they must pay the claims of the Vendors with respect to the Goods, or the Vendors may refuse to continue to do business with the Debtors.

14. The Debtors are not seeking to change the amounts owed to the Vendors or the priority in which creditors are paid in these cases. Rather, the Debtors are only seeking to

process payments, in their discretion, to the Vendors' claims because those claims, as they related to the 20-Day Goods, are afforded administrative expense status by the Bankruptcy Code.

15. In return for receiving prompt payment on account of obligations arising with respect to any 20-Day Goods, the Vendors, through the endorsement of any check for payment in respect of such 20-Day Goods, shall be deemed to have agreed to continue supplying Goods to the Debtors at prevailing market prices in accordance with the terms and conditions (including payment terms) pursuant to historical practices in effect between such Vendor and the Debtors in the twelve months prior to the Petition Date, or such other terms and conditions as are agreed to by the Debtors and the applicable Vendor.

**B. Obligations Arising From Postpetition Delivery Of Goods And Services Are Administrative Expense Claims**

16. Under the provisions of section 503(b)(1)(A) of the Bankruptcy Code, all obligations that arise in connection with the postpetition delivery of Goods (the "Postpetition Goods") and Services (the "Postpetition Services") to the Debtors are, by definition, administrative expenses. Therefore, the Debtors believe that they have the authority to make payment for the Postpetition Goods and Postpetition Services received regardless of the time when the orders for such Goods or Services were placed. Moreover, the Debtors believe that they have authority to make progress payments, in their discretion, to ensure such delivery of Postpetition Goods and Services.

17. The continued supply of Postpetition Goods and Postpetition Services is crucial to the Debtors' business. Without a continuous supply of Postpetition Goods and Postpetition Services, the Debtors' ethanol production, marketing, and distribution operations cannot continue to operate. Any interruption or disruption in the relationship between the

Debtors and Vendors would be harmful and detrimental to the Debtors' business and could fundamentally undermine the Debtors' reorganization efforts.

18. The Debtors' relationships with their Vendors are so essential and their need for Goods to be shipped and Services provided on a timely basis is so acute that the Debtors believe it is crucial to reassure their Vendors that their valid claims will be paid by the Debtors in the ordinary course of business. The Debtors believe that payment of claims for 20-Day Goods and Postpetition Goods and Services are essential to enabling the Debtors to continue its business and for the Debtors to successfully reorganize. Therefore, the Debtors seek to pay these administrative expenses in the ordinary course of business.

## APPLICABLE AUTHORITY

**A. Payment For Goods Delivered Within 20 Days Of The Filing Date Is Necessary And Appropriate.**

19. Pursuant to section 503(b)(9) of the Bankruptcy Code, the Vendors' claims relating to the 20-Day Goods will be administrative expenses at the end of these cases. Section 503(b)(9) provides that:

> After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including –
>
> \* \* \*
>
> (9) the value of goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business.

11 U.S.C. § 503(b)(9); see also In re Rio Valley Motors Co., LLC, Case No. 11-06-11866-SS, 2008 WL 824271 (Bankr. D.N.M. Mar. 24, 2008) (holding that section 503(b)(9) of the Bankruptcy Code gave administrative priority to prepetition claim of automobile insurance
PAC/916551　　　　　　　　　　　　　　　　8

company for value of vehicle delivered to debtor car dealership within 20 days of date of chapter 11 bankruptcy filing).

20. Additionally, bankruptcy courts have held that the timing of the payment of administrative expenses allowed under section 503(b)(9) is within the discretion of the court. See In re Tubular Techs., LLC, 372 B.R. 820, 824, n.4 (Bankr. D.S.C. 2007) (court held that timing of payment of administrative expense allowed under section 503(b)(9) is within discretion of bankruptcy court); In re Bookbinders' Rest., Inc., 2006 WL 3858020, at *3-4 (Bankr. E.D. Pa. Dec. 28, 2006) (quoting In re Garden Ridge Corp., 323 B.R. 136, 143 (Bankr. D.N.J. 2005) (court held that timing of payment of administrative expense allowed under section 503(b)(9) is within discretion of bankruptcy court and that before compelling chapter 11 debtor to pay allowed administrative expense judge may consider potential "prejudice to the debtor, hardship to the claimant, and . . . detriment to other creditors.").

**B. Payment For Goods Delivered And Services Provided After The Filing Date Is Necessary And Appropriate.**

21. Section 503(b)(1)(A) of the Bankruptcy Code governs the allowance of administrative expenses, including "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case." 11 U.S.C. § 503(b)(1)(A). Administrative expense priority status is granted when "the debt both (1) 'arise[s] from a transaction with the debtor-in-possession' and (2) is 'beneficial to the debtor-in-possession in the operation of the business.'" In re Jartran, Inc., 732 F.2d 584, 587 (7th Cir. 1984) (quoting In re Mammoth Mart, Inc., 536 F.2d 950, 954 (1st Cir. 1976)); see also In re Moltech Power Sys., Inc., 273 B.R. 268, 271 (Bankr. N.D. Fla. 2002); In re CP III Ltd. P'ship., 224 B.R. 206, 208 (Bankr. M.D. Fla. 1998).

22. The postpetition receipt and acceptance of the Postpetition Goods and Postpetition Services satisfies the first element of the foregoing test. With respect to the second element, not only are the Postpetition Goods and Postpetition Services beneficial to the Debtors, they are absolutely critical for the uninterrupted operation of the Debtors' production facilities. Without such Postpetition Goods and Postpetition Services, the Debtors cannot manufacture and deliver ethanol and other related product to their customers. Accordingly, the Debtors' receipt of Postpetition Goods and Postpetition Services gives rise to postpetition claims in favor of the Vendors, claims that are entitled to administrative expense priority status under section 503(b) of the Bankruptcy Code.

23. Accordingly, for all of the foregoing reasons, the relief requested herein should be granted.

## NOTICE

24. Notice of this Motion will be given to: (a) the Office of the United States Trustee for the District of Delaware; (b) all required government entities; (c) counsel to the Debtors' prepetition secured lenders; (d) counsel to any proposed provider of debtor-in-possession financing; and (e) the parties included on the Debtors' list of twenty (20) largest unsecured creditors (collectively, the "Notice Parties"). The Debtors submit that, under the circumstances, no other or further notice is required.

25. No previous request for the relief sought herein has been made to this Court or any other court.

## CONCLUSION

WHEREFORE, based upon the foregoing, the Debtors respectfully request that the Court enter an order substantially in the form annexed hereto (a) granting the relief requested herein and (b) granting such other relief as may be deemed just and proper.

Dated:   Wilmington, Delaware
         May 17, 2009

Respectfully Submitted,

/s/ M. Y.

Steven M. Yoder (DE Bar No. 3885)
Jeremy W. Ryan (DE Bar No. 4057)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, Delaware 19899-0951
Phone: (302) 984-6000
Facsimile: (302) 984-1192

- and -

Lawrence C. Gottlieb (LB 2565)
Richard S. Kanowitz (RK 0677)
COOLEY GODWARD KRONISH LLP
1114 Avenue of the Americas
New York, NY 10036
Phone: (212) 479-6000
Facsimile: (212) 479-6275

*Proposed Counsel for Debtors and Debtors in Possession*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>PACIFIC ETHANOL HOLDING CO. LLC,<br>et al.,<br><br>Debtors.[1] | Case No.<br><br>Chapter 11<br>Joint Administration Pending<br><br>Re: Docket No. ___ |

**ORDER PURSUANT TO 11 U.S.C. §§ 105 AND 503(b)(9), (I) CONFIRMING GRANT OF ADMINISTRATIVE EXPENSE STATUS TO OBLIGATIONS ARISING FROM PREPETITION DELIVERY OF GOODS RECEIVED WITHIN 20 DAYS OF THE COMMENCEMENT DATE OF THESE CHAPTER 11 CASES, (II) CONFIRMING GRANT OF ADMINISTRATIVE EXPENSE STATUS TO OBLIGATIONS ARISING FROM POST PETITION DELIVERY OF GOODS AND SERVICES AND (III) AUTHORIZING, BUT NOT DIRECTING, THE DEBTORS TO PAY SUCH OBLIGATIONS IN THE ORDINARY COURSE OF BUSINESS**

Upon the motion (the "Motion")[2] of the Debtors for an order pursuant to 11 U.S.C. §§ 105 and 503(b)(9) (the "Bankruptcy Code"), (i) confirming grant of administrative expense status to obligations arising from prepetition delivery of Goods received within 20 days of the commencement date of these Chapter 11 Cases, (ii) confirming grant of administrative expense status to obligations arising from prepetition delivery of Goods and Services received postpetition, and (iii) authorizing, but not directing, the Debtors to pay such obligations in the ordinary course of business; and the Court having reviewed the Motion; and the Court having determined that the relief requested in this Motion is in the best interests of the Debtors, their estates, their creditors and other parties-in-interest; and it appearing that notice of the Motion

---

[1] The Debtors consist of: Pacific Ethanol Holding Co. LLC (EIN: XX-XXX6981); Pacific Ethanol Madera LLC (EIN: XX-XXX3339); Pacific Ethanol Columbia, LLC (EIN: XX-XXX9392); Pacific Ethanol Stockton LLC (EIN: XX-XXX8349); Pacific Ethanol Magic Valley, LLC (EIN: XX-XXX7391). Pacific Ethanol Holding Co. LLC is the sole member of each of the other Debtors. The mailing address for Pacific Ethanol Holding Co. LLC is 400 Capitol Mall, Suite 2060, Sacramento, CA 95814.

[2] Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to them in the Motion.

PAC/916551

was good and sufficient under the particular circumstances and that no other or further notice need be given; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED AND DECREED THAT:**

1. The Motion is GRANTED.

2. The prepetition claims of the Vendors arising as a result of providing the Debtors with 20-Day Goods shall have administrative expense priority claim status and the Debtors are authorized, but are not required, to pay the undisputed claims for 20-Day Goods in the ordinary course of business and in accordance with the DIP Budget.

3. In return for receiving prompt payment on account of obligations arising with respect to any 20-Day Goods, the Vendors, through the endorsement of any check for payment or other written acknowledgment in respect of such 20-Day Goods, shall be deemed to have agreed to continue supplying Goods to the Debtors at prevailing market prices in accordance with the most favorable terms and conditions (including payment terms) pursuant to historical practices in effect between such Vendor and the Debtors in the twelve months prior to the Petition Date, or such other terms and conditions as are agreed to by the Debtors and the applicable Vendor.

4. The Vendors shall have administrative expense priority claims under 11 U.S.C. § 503(b) for those undisputed obligations arising relating to Postpetition Goods or Postpetition Services received and accepted by the Debtors on or after the Petition Date and the Debtors are authorized but not directed to pay those obligations arising from the delivery of Postpetition Goods or Postpetition Services (regardless of whether Postpetition Goods or Postpetition Services were ordered by the Debtors before or after the Petition Date).

5. For purposes of this Order, Goods and Services shall be deemed to be delivered to the Debtors postpetition (a) if possession or control of such Goods is transferred to the Debtors on or after the Petition Date, (b) if, pursuant to a contract or applicable nonbankruptcy law, risk of loss of such Goods passes to the Debtors on or after the Petition Date, or (c) if Services are rendered to benefit the Debtors' estate on or after the Petition Date.

6. The requirements provided by Rule 6003 are satisfied by the contents of the Motion.

7. The Debtors do not waive any rights to assert any objections, defense, claims, counterclaims or offsets based on facts or laws to any claims asserted by Vendors.

Dated: Wilmington, Delaware
_____, 2009

_____
UNITED STATES BANKRUPTCY JUDGE