IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---

In re:  ) Case No.
 )
PACIFIC ETHANOL HOLDING CO. LLC,  ) *Chapter 11*
et al.,  ) Joint Administration Pending
 )
Debtors.[1]  )
 )
 )

---

### DECLARATION OF THOMAS E. LUMSDEN IN SUPPORT OF DEBTORS' MOTION FOR ENTRY OF ORDERS (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN POSTPETITION SENIOR SECURED SUPER-PRIORITY FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363(C), 363(E), 364(C), 364(D)(1), 364(E) AND 507, (B) UTILIZE CASH COLLATERAL OF CERTAIN PREPETITION LENDERS, (II) GRANTING ADEQUATE PROTECTION TO CERTAIN PREPETITION LENDERS PURSUANT TO 11 U.S.C. §§ 361, 362, 363 AND 364, (III) SCHEDULING FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(B) AND (C), AND (IV) GRANTING RELATED RELIEF

1. I am a Senior Managing Director at FTI Consulting, Inc. ("FTI"), a professional services firm that specializes in providing restructuring and financial services. FTI served as Accountant and Financial Advisor to Pacific Ethanol Holding Co. LLC ("PE HoldCo") and its debtor subsidiaries (collectively with PE HoldCo, the "Debtors") prior to the commencement of these chapter 11 cases. It is my understanding that the Debtors will seek to continue to employ FTI in this capacity in connection with their chapter 11 cases. I make this Declaration in support of the Debtors' motion for entry of orders (i) authorizing the Debtors to (a) obtain postpetition senior secured super-priority financing pursuant to 11 U.S.C. §§ 105, 361, 362, 363(c), 363(e), 364(c), 364(d)(1), 364(e) and 507, (b) utilize cash collateral of certain prepetition lenders, (ii) granting adequate protection to certain prepetition lenders pursuant to 11 U.S.C. §§ 361, 362, 363

---

[1] The Debtors consist of: Pacific Ethanol Holding Co. LLC (EIN:XX-XXX6981); Pacific Ethanol Madera LLC (EIN: XX-XXX3339); Pacific Ethanol Columbia, LLC (EIN: XX-XXX9392); Pacific Ethanol Stockton LLC (EIN: XX-XXX8349); and Pacific Ethanol Magic Valley, LLC (EIN: XX-XXX7391). Pacific Ethanol Holding Co. LLC is the sole member of each of the other Debtors. The mailing address for Pacific Ethanol Holding Co. LLC is 400 Capitol Mall, Suite 2060, Sacramento, CA 95814.

and 364, (iii) scheduling a final hearing pursuant to Bankruptcy Rule 4001(b) and (c), and (iv) granting related relief (the "DIP Motion"), filed contemporaneously herewith. Except as otherwise stated herein, I have personal knowledge of the facts set forth below, and if called upon, I could and would competently testify thereto.

2. I have worked in the financial advisory and restructuring services field for more than twenty-five years on numerous engagements. I am presently serving as the financial advisor to several ethanol producers across the United States and have recently served as CRO and financial advisor to two biodiesel producers. I have previously served as, among other engagements: (i) the financial advisor to the banks and creditors' committee in the PG&E bankruptcy; (ii) the financial advisor to the trustee in The Bennett Funding Group bankruptcy; (iii) the financial advisor to the creditors' committee in the LTV Aerospace and Defense bankruptcy; (iv) the financial advisor to the creditors' committee in the Golden Northwest Aluminum case; and (v) the Liquidating Trustee in the Vanalco case. I have also served as the chapter 11 trustee in the Geothermal Resources International Corporation bankruptcy.

3. I am a Certified Public Accountant. I am a member of the Association of Insolvency and Restructuring Advisors and a Fellow of the American College of Bankruptcy. Additionally, I am a Certified Insolvency and Reorganization Advisor and hold a certification in Distressed Business Valuation and speak and testify regularly on valuation issues. Annexed hereto as **Exhibit A** is a true and correct copy of my current *curriculum vitae*.

4. I have previously provided restructuring and financial advisory services in connection with numerous business and energy transactions involving the purchase and sale of assets outside of bankruptcy and within bankruptcy under section 363 of the Bankruptcy Code. I have previously testified in bankruptcy court, and my opinions have been accepted as expert

testimony, in regard to various issues concerning the sale process and valuation of assets involved in ethanol sale transactions.

5. FTI was engaged as financial advisor to PE HoldCo in January 2009. I have personally spent significant time on this engagement providing services to PE HoldCo including, among other things, reviewing the company records and financial data, touring the plant sites and preparing budgets and financial models. I have reviewed relevant ethanol market statistics and the current pricing curves for corn, ethanol, natural gas and gasoline. I have analyzed the operating performance and financial data for several ethanol destination plants in the United States. I have also reviewed the DIP Motion and the Declaration of Christopher W. Wright, Vice President and Secretary of PE HoldCo, in support of the Debtors' "first day" applications and motions.

6. The Debtors' business is operating in a uniquely difficult period in the credit markets generally. At a time when many ethanol plants are for sale due to weakened margins, potential buyers are also hampered by lack of access to traditional sources of credit. Banks, insurance companies and other traditional lending institutions have restricted new lending and are now focused on shoring up balance sheets and existing loans.

7. As a result of these macroeconomic factors and the Debtors' prepetition capital structure discussed below, the Debtors have encountered significant obstacles in their efforts to obtain financing sufficient to fund their operating costs and the administration of these chapter 11 cases. During the months preceding the bankruptcy filings, the Debtors surveyed various sources of postpetition financing, including: (i) WestLB AG, New York Branch ("WestLB"), as lender, administrative and collateral agent for the syndicate lenders (together with WestLB, the "Prepetition Lenders") party to that certain credit agreement with the Debtors, dated as of

February 27, 2007 and subsequently amended, restated, supplemented or otherwise modified; (ii) Lyles United, LLC ("Lyles"), as holder of that certain promissory note executed by Pacific Ethanol, Inc. on November 7, 2008 and subsequently amended, restated, supplemented or otherwise modified; and (iii) certain unrelated third parties, including Beal Bank/CSG Investments, Bank of America, Versa Capital, PNC Bank, Blackrock Kelso, Alladin Capital, and Fortress Investment Group.

8. In exploring their options, the Debtors recognized that the obligations owed to the Prepetition Lenders are secured by the plants and related assets, therefore (i) the liens of these prepetition secured creditors would have to be primed to obtain postpetition financing, (ii) the Debtors would have to find a postpetition lender willing to extend credit that would be junior to the liens of these prepetition secured creditors, or (iii) postpetition financing would have to be extended on an unsecured basis.

9. While Lyles did discuss providing debtor-in-possession financing, Lyles never made a definitive offer to provide such financing to the Debtors. Nonetheless, it was made clear to the Debtors that if Lyles was to make a definitive offer to provide postpetition financing, Lyles would require that such financing be secured by liens priming those of the Prepetition Lenders on the plants and related assets. It was also made clear to the Debtors by the Prepetition Lenders that the Prepetition Lenders would not consent to being primed by any other lender or lending group. Accordingly, the Debtors determined that borrowing from any outside lender or lending group that required security senior to that of the Prepetition Lenders could likely only be accomplished through an extended, contested hearing on whether the requirements of section 364(d) of the Bankruptcy Code were satisfied. Additionally, despite their best efforts, the Debtors were unable to find a postpetition lender willing to extend credit on an unsecured basis

or on a junior secured basis that would be subject and subordinate to the liens of the Prepetition Lenders on the plants and related assets. The potential debtor in possession lenders that FTI contacted either had no interest in providing financing for the ethanol industry and its related assets, or had no interest in providing financing that would require a priming fight with the existing secured lenders.

10. The DIP Lenders[1] have indicated a willingness to extend postpetition financing and, thus, prime their own prepetition security interests on certain terms and conditions that have been agreed to by the Debtors. In view of the circumstances indicated above, the Debtors ultimately concluded that the postpetition facility negotiated with the DIP Lenders is desirable because, among other things, it will permit the Debtors to obtain the requisite financing needed to fund operations and the administrative costs of these proceedings – all without requiring the Debtors to (a) continue their thus far fruitless search for an outside lender under substantial time and financial constraints and, (b) bear the substantial risk that they would not succeed in priming the Prepetition Lenders, to the extent such outside financing was ultimately found.

11. Moreover, the DIP Lenders' proposal offers the most attractive combination of quality, pricing, fees, and covenant flexibility. In fact, a comparison of the DIP Lenders' proposal to the postpetition facility obtained by the debtors in the VeraSun[2] chapter 11 cases pending in this District shows substantial similarities, particularly with respect to pricing and fees. The DIP Lenders' proposal is also favorable to the pricing and fees of the postpetition facility obtained in the Aventine Renewable Energy chapter 11 cases pending in this District.

---

[1] Defined in the DIP Motion as WestLB together with any person or entity who shall become a lender under the postpetition financing facility.

[2] As of their chapter 11 filings on October 31, 2008, VeraSun and its subsidiaries operated 17 ethanol plants located in eight states.

Importantly, the DIP Credit Agreement provides that the Debtors may draw funds immediately (on an interim basis) to meet the administrative and operational obligations to be incurred during these proceedings. Additionally, because the DIP Lenders are comprised of certain of the Prepetition Lenders, they possess a substantial base of knowledge with respect to the Debtors' business and assets that will provide significant benefits to these estates, including, but not limited to, the speed with which they are able to close the proposed financing facility. Consequently, the Debtors determined that the DIP Lenders' proposal is the best financing option available under these circumstances.

12. Furthermore, the DIP Lenders' proposal is the product of vigorous and extensive, arms'-length negotiations with the Debtors over the terms and conditions of the facility, as set forth in the DIP Credit Agreement. Indeed, I have spent significant time in face-to-face meetings, participated in numerous conference calls and sent and received many e-mails and other forms of communications on the proposed financing facility.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing statement is true and correct.

Dated this 14th day of May 2009 at San Francisco, California

_____
Thomas E. Lumsden,
Senior Managing Director
FTI Consulting, Inc.

# EXHIBIT A

## CURRENT CURRICULUM VITAE



# Thomas E. Lumsden, CPA, CIRA

Senior Managing Director - Corporate Finance

tom.lumsden@fticonsulting.com

One Front Street
Suite 1600
San Francisco, CA 94111
Tel: (415) 283-4283
Fax: (415) 283-4266

**Certifications**
Certified Public Accountant, California

Certified Insolvency and Restructuring Advisor

Certification in Distressed Business Valuation

**Professional Affiliations**
Association of Insolvency and Restructuring Advisors

California State Society of Certified Public Accountants

Fellow, American College of Bankruptcy

**Education**
B.S. in Economics, University of California, Los Angeles

Thomas Lumsden is a senior managing director in FTI's Corporate Finance practice and is based in San Francisco. Mr. Lumsden has more than 29 years of corporate finance experience. He has assisted numerous companies in the energy, utility, service and manufacturing sectors in identifying opportunities to enhance operational efficiencies reorganize management for operating effectiveness and restructure complex capital structures.

Mr. Lumsden has extensive experience in workouts, valuations, reorganization and mergers and acquisition services. He has worked in Los Angeles, New York and San Francisco. His experience includes representing debtors, creditors and creditors' committees in workouts and bankruptcies in a variety of industries.

He has prepared and testified on valuation of numerous businesses in the manufacturing, energy, healthcare and real estate sectors. He has prepared valuations and assessments of value of over 100 different power plants including natural gas, coal, geothermal, wind and nuclear power fuels.

Mr. Lumsden has performed in-controls services work for several large regional banks, working to evaluate the credit policies, procedures and controls. He has been involved in the re-evaluation of the full range of management controls to board-level policy on underwriting standards, signature authority and electronic file systems.

## Professional Experience

### Biofuels

- Served as CRO and interim CEO for a Biodiesel refiner in Alabama, directing operations and restructuring of contracts and financing interests.
- Served as financial advisor to a west coast based Biodiesel refiner and marketer.
- Serve as financial advisor to ethanol producers Northeast Biofuels, LLC and Cascade Grain Products, LLC, in their Chapter 11 bankruptcies.
- Serve as financial advisor to a multi plant ethanol producer and marketer.
- Financial advisor to a lender to an ethanol and food products company.

### Utility and Power Practice

- Served as financial advisor to the banks and creditors committee in PG&E bankruptcy matter. This involved intense assessment of utility cash flows and value and recovery strategy for the benefit of creditors. Substantial work has been performed with respect to California PUC and FERC regulation governing generator claims, transmission charges and filed rate doctrine.
- Served as valuation expert for parties in international arbitration concerning the Dabhol Power Plant. Served as valuation expert for parties in international arbitration concerning a merchant plant in Latin America. Process also involved assessment of economic impact of take or pay gas transmission contracts and LNG supply contracts.



www.fticonsulting.com


Thomas E. Lumsden

- Served as financial advisor to banks in numerous assignments involving global, east coast, Midwest and Northwest utility and power companies assessing the plant cash flows and values, regulatory recovery valuation and credit standing of the holding companies, power plants and utilities, leading to successful restructure of the capital structures.

- Served as lead financial advisor to California Independent System Operator Corporation and California Power Exchange Corporation during their start-up and development. This role involved assisting the trustee of the ISO and PX Restructuring Trusts in managing the process to develop these enterprises, which operate and control the electrical transmission grid in California and operate an electricity trading exchange. This effort required management of a development budget of $300 million over a 15-month period. Provided support in project management, financial analysis and recordkeeping; approvals of tariff and financing; support for the human resource process; and support to the new boards of these two organizations for the start-up, which occurred on March 31, 1998.

- Served as financial advisor to the Los Angeles Department of Water and Power, which included assisting the general manager in a review of operations, finance and the capital structure of the department and in proposing a comprehensive plan of reorganization for both the power and water sectors, designed to enable the power business to be price and cost competitive in the forthcoming deregulation period.

- Served as Chapter 11 trustee for Geothermal Resources International Corporation (GEO) and the Coldwater Creek Geothermal Project. Completed GEO bankruptcy in 1991 with the successful reorganization of the parent company and a $150 million steam generation facility. Restructured Coldwater Creek Project, a 60 Megawatt (MW) steam generation facility that was owned by the Central California Power Authority, a joint powers agency comprising the Sacramento Municipal Utility District, Modesto Irrigation District and the City of Santa Clara.

- Served as receiver for 48 MW co-generation facility in McKittrick, California. Supervised operations, and completed valuation and sale process, which led to successful sale of the plant and SO2 power contract. Evaluated take or pay gas contracts and decision to curtail or renegotiate agreements.

- Assisted a major Northeast utility in the successful divestiture of its coal-fired power plants to support the state deregulation initiative. Services involved development of option value strategy for sale, preparation of briefing document for potential buyers, field due diligence for each plant site, preparation of plant tour presentations and coaching of plant management for those presentations. Sales resulted in $1.8 billion in sale proceeds.

- Advisor to the independent power producers with a reorganization of operations financed both in and out of bankruptcy. Similar services were performed for Flowind, Kenetech Wind Power and Solar operations.

- Advisor to various independent power producers in their initial and subsequent project and term finance transactions.

- Assisted a northwest utility in evaluation of a power purchase agreement leading to implementation of a strategy for buyout of the power plant.

- Advisor to a western utility in assessment and calculation of costs for compliance with vegetation management associated with electrical transmission lines.

- Assisted a western utility in the business assessment of profitability and valuation of an





existing gas transmission system, based on variable pricing in the system and de-bottle-necking of the transmission connections.

- Performed valuation of partially completed gas-fired power plant in Mexico to determine buyout price for minority investor.

**Oil and Gas Experience**

- Worked as lead audit manager for ARCO during 1976-80 and for Tosco during 1982-85. Performed financial and operational audits of most divisions of these large oil and gas companies. Experience included development of Alaska Pipeline and investigation of oil trading through lower 48 oil pipeline system for ARCO. Experience also included debt restructuring and asset disposition program for Tosco involving large bank syndicate.

- Assisted a western utility in the business assessment of profitability and valuation of an existing Texas gas transmission system. Project involved development of a computerized gas model to forecast operating income based on simulation of variable pricing in the system and de-bottle-necking of the transmission connections.

- Performed numerous due diligence assignments in connection with acquisition and disposition of oil refineries, marketing assets and terminals.

**Business Restructuring Services**

- Served as financial advisor to Commonwealth Equity Trust, a $150 million real estate investment trust in Chapter 11. Determined the appraisal value of the properties and enterprise value for the overall entity, negotiated with the significant secured creditors and restructured the debt in a consensual plan that was confirmed within one year of the date of filing. Assisted in the development of a new business plan for the assets and installation of a new management team. Properties included hotel, commercial office, retail strip and industrial locations.

- Financial advisor to 10000 Millenium Plaza LLC, the developer of real estate in Century City. Testified on valuation of a joint venture for development as a luxury condo/hotel concept. Directed auction of property in bankruptcy to yield the highest price for land per square foot in LA County.

- Mr. Lumsden has extensive experience in senior housing and healthcare in California, having served as a consultant to the California Department of Social Services (DSS) for the Continuing Care Contracts. This role has involved assisting the DSS in review of financial feasibility of new and existing CCRC's in California, combining the element of senior housing and healthcare services for residents. In addition, Mr. Lumsden successfully restructured in bankruptcy the La Jolla Village Towers in San Diego, a large multi-service senior housing project.

- Served as financial advisor to the trustee for The Bennett Funding Group, a $1 billion financing company, in its Chapter 11 proceedings. Services involved oversight of equipment leasing operations, investigation and recovery of non-core assets, and investigation and support for criminal indictments brought in connection with a Ponzi scheme.

- Served as financial advisor to investors in IRM Corporation, conducting a forensic review of a series of 75 real estate partnerships and assessment of value and cash flows for each

property. Properties included commercial office, industrial and residential properties.

- Served as financial advisor to the unsecured creditors committee of LTV Aerospace and Defense Company in the LTV bankruptcy, one of the largest and longest running bankruptcies on record. This case involved significant issues regarding the pension and post-employment benefits of steel workers as well as the economic fundamentals of the U.S. steel industry. Critiqued valuation reports and testimony prepared by others and successfully presented alternative valuations in Court for the sale of assets of LTV Aerospace and Defense Company.

- Served as Chief Restructuring Officer for Solidus Networks, Inc., a privately held company that was developing products in the biometric identification and transaction processing markets for consumer based transactions.

- Served as a financial advisor to the management of Guy F. Atkinson Construction, a $600 million construction company, during its Chapter 11 proceedings. Assisted the company in its reorganization efforts and implemented significant cost reduction measures. Further assisted the investment bank in the sale of the company to Clark Construction Company.

- Involved in the bankruptcies of various engineering and construction companies, including Dutra Construction, Dillingham Construction and MK Construction.

- Served as a financial advisor to Coating Technologies International, performing turnaround services for this paper and cloth coating company. Services resulted in strategic assessment of the company, negotiation with a strategic purchaser, valuation and successful closure of the transaction.

- Served as the financial advisor to the senior lender in the SunWorld International bankruptcy proceeding. This work involved analysis of the row crop and tree fruit operations, packing and marketing businesses, valuation of the business, assessment of the business plan and negotiation of the plan of reorganization.

- Represented the lender to NorCal-Crosetti Foods, a frozen vegetable packer. This activity involved business assessment of the operations and the upcoming packing season, development of a cash flow model, structuring of a new loan facility and reporting package to manage the risk, and assessment of alternative business strategies.

- Performed due diligence for the investors in Del Monte Foods Corporation, which included evaluating the business and operations of the company, identifying consolidation opportunities and restructuring of product flow and processes

- At Imperial Sugar, Mr. Lumsden worked with management to perform a full review of the business strategy of this sugar producer and marketer. This involved evaluation of marketing and manufacturing strategy, defining the appropriate market structure and determining the most cost effective way to support that market. This resulted in the rationalization of several business segments, successful sales of assets and redeployment of capital to higher margin products.

- Experienced in working with retail franchisors, including IHOP Corp. and Discovery Zone, and retail operating companies, including Rusty Pelican Restaurants, Houlihan's Restaurants and Natural Wonder Stores. Developed the business plan for IHOP Corp. with senior management to support the continued investment by the Swiss holding company which later resulted in a successful MBO and IPO.

- Evaluated the manufacturing operations and marketing strategy for Levelor and 3-Day Blinds, successfully implementing production efficiencies and expansion of the product offerings and store capacity.
- Performed review of business reviews and profit enhancement projects on a number of publishing and fulfillment companies including Entrepreneur Group and Neodata.
- Worked on secondment with Midland Bank officials to restructure segments of the Crocker Bank loan portfolio prior to the sale of Midland's interest to Wells Fargo Bank in 1985.
- Served as financial advisor to agents for large syndicated bank credits involving workout of troubled loans. Industries have included agriculture, restaurants, food processing, computer services, manufacturing, hospitality and healthcare.

**Employment History**

**FTI Consulting, Inc.**—senior managing director, August 2002 to present

**PricewaterhouseCoopers LLP**—partner, joined firm in 1974 and 1982–2002

**Fragrance Development Corporation**—chief financial officer, 1980-82